Makolle R. WILLIAMS

v.

METROPOLITAN WASTE CONTROL COMMISSION; and George Vania, David Kellesvig, Walter Krantz, Gary Sward, Dennis Schumacher, Roger Tatge, and Lou Klimek, individually.

Civ. No. 4–87–1016.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 27, 1992.

Donald E. Horton, Horton and Associates, Minneapolis, Minn., for plaintiff.

Mary E. Stumo, Faegre & Benson, Minneapolis, Minn., for defendants Metropolitan Waste Control Com'n, George Vania, David Kellesvig, Walter Krantz, Gary Sward, Dennis Schumacher, and Lou Klimek.

Robert Latz, Robert Latz, P.A., Minneapolis, Minn., for defendant Roger Tatge.

## ORDER

ROSENBAUM, District Judge.

Plaintiff, Makolle Williams, brings this race discrimination suit against the Metropolitan Waste Control Commission ("MWCC") and certain MWCC employees and supervisors, in their individual capacities. Plaintiff's claims under 42 U.S.C. § 1983, the Minnesota Human Rights Act (the Act), Minnesota Statutes, § 363.01 *et seq.*, and Minnesota common law, were tried to a jury or the Court as required by law.[1]

The Court has jurisdiction over this matter, pursuant to 42 U.S.C. § 1983 and under principles of pendent jurisdiction.

Trial commenced on May 28, 1991, and, after 11 trial days, concluded on November 5, 1991. Plaintiff's § 1983 race discrimination claims against the MWCC and defendants George Vania (Vania), David Kellesvig (Kellesvig), and Walter Krantz (Krantz), in their individual capacities, and plaintiff's common law assault claims against the MWCC and defendant Dennis Schumacher (Schumacher), were submitted to the jury on November 7, 1991. The jury returned a verdict in favor of the MWCC and the individual defendants on all of these counts the same day.

This matter is now before the Court for resolution of plaintiff's pendent, non-jury claims which arise under the Minnesota Human Rights Act. The Court has heard and considered all of the evidence presented at trial, as well as the arguments, pleadings, and memoranda of the parties. This order constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.).

Before the Court are those claims set forth in Count I of plaintiff's amended complaint. Plaintiff charges the MWCC with race discrimination in violation of Minnesota Statutes, § 363.03, subdivision 1(2)(c), and reprisal discrimination in violation of Minnesota Statutes, § 363.03, subdivision

---

1. Plaintiff's claim for intentional infliction of emotional distress was dismissed by summary judgment, January 20, 1988. Plaintiff's claim under 42 U.S.C. § 1981 was dismissed by agreement of the parties on May 14, 1990. Plaintiff's claim for negligence *per se* was dismissed by agreement of the parties on November 5, 1991. Plaintiff's claim of negligent supervision and training was dismissed on the MWCC's motion for directed verdict, which motion was granted orally by the Court on November 5, 1991.

7. Count I also charges Gary Sward,[2] Vania, Kellesvig, Krantz, Schumacher, Roger Tatge (Tatge), and Lou Klimek[3] with aiding and abetting race discrimination, and with aiding and abetting reprisal discrimination in violation of the Act.

Under Minnesota Statutes, § 363.03, subdivision 1(2)(c), it is an unfair employment practice for an employer "to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" on the basis of race. Plaintiff claims the MWCC discriminated against him based upon his race by subjecting him to a racially hostile working environment, by subjecting him to more severe discipline than that visited upon similarly situated white employees, and by constructively discharging him.

The Court's examination of the evidence is guided by the three-part, shifting burden analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 626 (Minn.1988). Under *McDonnell Douglas*, plaintiff must first prove a prima facie case of race discrimination.

■ To establish a prima facie case of a hostile working environment, plaintiff must show, by a preponderance of the evidence: first, that he belongs to a protected group; second, that he was subjected to unwelcome racial harassment which had the purpose or effect of unreasonably interfering with the terms, conditions, or privileges of his employment; and third, that the MWCC knew or should have known of the harassment in question and failed to take prompt action. *Minneapolis Police Dept. v. Minneapolis Com'n on Civil Rights*, 402 N.W.2d 125, 131 (Minn.App.1987), *aff'd*, 425 N.W.2d 235 (Minn.1988); *Continental Can Co. v. State of Minnesota*, 297 N.W.2d 241, 247 (Minn.1980).

■ Plaintiff is an African–American and is, therefore, a member of a protected group. The Court finds, however, that plaintiff was not subjected to unwelcome racial harassment by MWCC employees or supervisors. Plaintiff testified to a number of incidents which, in his view, constituted racial harassment. In particular, plaintiff testified that he was subjected to a hostile remark in the MWCC lunchroom, and had his workbench stool removed from his workbench. In his view, these occurrences were a result of his race. He testified to conflicts with co-workers Jablonski, Gary Peltzer, and defendant Schumacher, which he perceived to be the result of these co-workers' racially hostile attitudes. Plaintiff also claims he was subjected to racially hostile remarks by defendant Tatge and co-worker Martin Raleigh.

These, and other allegedly racial incidents which the Court finds too incredible or too irrelevant to address, were either wholly unsupported by corroborating testimony or contradicted in the record by witnesses the Court found to be more credible than plaintiff.

The Court makes clear that it finds plaintiff to be a person whose fidelity to the truth is much in question. He was shown to have repeatedly lied to insurers, creditors, employers, and courts and in numerous other incidents throughout his history. The Court observed plaintiff over several days of testimony and under cross examination. The Court finds him to be of very low credibility.

The Court finds that both the lunchroom and stool incidents were commonplace occurrences in the MWCC workplace and were wholly unrelated to plaintiff's race. Plaintiff's conflicts with his co-workers were also unrelated to race. Many of these conflicts arose from the defensive posture taken by fellow employees who were concerned about plaintiff's possible

---

**2.** Defendant Sward died subsequent to the filing of this case, and the claims against him were dismissed from this action on April 23, 1991, pursuant to Rule 25, Fed.R.Civ.P.

**3.** Plaintiff's claims against defendant Klimek were dismissed by the Court on November 5, 1991, upon Klimek's motion for dismissal pursuant to Rule 41(b), Fed.R.Civ.P.

violent tendencies.[4]

The Court finds that defendant Tatge did use the words "sunshine" and "boy" in a conversation with the plaintiff. It is clear, however, that while the conversation included racially-charged words, the words were not directed at the plaintiff. Certainly, the mere utterance of these words does not constitute race discrimination. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981).[5] *See also Lamb v. Village of Bagley,* 310 N.W.2d 508, 511 (Minn.1981) (racial epithets and slurs actionable only where comments are intended to be demeaning). Similarly, the Court finds that co-worker Martin Raleigh did use the word "nigger." This word was used, however, outside of the plaintiff's hearing and was not used in reference to the plaintiff. However reprehensible the use of the word may be, the simple fact of its use does not constitute race discrimination against the plaintiff.

Plaintiff alleges that he was disciplined more severely than similarly situated white employees as a result of his race. To establish his claim, plaintiff must show that, "he is a member of a protected class, that he was disciplined, and that the discipline imposed was harsher than that imposed on comparably situated whites." *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 915 (8th Cir.1986). "Precise equivalence in culpability between employees is not required. The acts need only be of comparable seriousness." *Id.*

■ Plaintiff claims that the MWCC's requirement that he produce weekly documentation of his medical condition during an extended disability leave constitutes disparate discipline. This claim fails because the Court finds as a matter of fact and a matter of law that there was no person, of any race, at the MWCC who can be remotely considered comparably situated. Plaintiff's attendance problems were substantial and unprecedented at the MWCC. In 1984, plaintiff missed 33 work days. In 1985, plaintiff missed 35 days. During that portion of 1986 when plaintiff was employed by the MWCC, plaintiff missed 69 work days. The Court finds no comparable situation in the record to which the plaintiff's treatment may be compared.

In addition, the Court finds that the MWCC's actions were reasonable in light of plaintiff's attendance problems, and were unrelated to plaintiff's race. The MWCC simply wanted proof of plaintiff's medical status and a date for his return. The Court finds these requests to be reasonable since the plaintiff had failed to report to work on a number of prior occasions when he had been expected.

■ The Court finds that the warning letter issued to plaintiff in September, 1986, following a physical confrontation with defendant Schumacher, does not constitute disparate discipline. Defendant Schumacher, a white employee comparably situated, received a substantially similar written warning following this same incident.

■ Finally, plaintiff alleges that his resignation from the MWCC on February 1, 1988, resulted from a constructive discharge. To establish a constructive discharge, the plaintiff must show that he resigned in order to escape intolerable working conditions caused by illegal discrimination. *Continental Can Co.,* 297 N.W.2d at 251. A "constructive discharge arises only when a reasonable person would find conditions intolerable." *Smith v. Goodyear Tire & Rubber Co.,* 895 F.2d 467, 472 (8th Cir.1990) (*quoting Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th

---

4. There was evidence, which the Court excluded from the jury's consideration, that the plaintiff had a history of violence. These included a criminal assault conviction which occurred during his employment at the MWCC. The jury knew nothing of this, yet found against the plaintiff. His co-workers, however, became aware of these incidents through the plaintiff's own reports as well as by "workplace scuttlebutt."

5. Because of the substantial similarities between Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* and the Minnesota Human Rights Act, the Minnesota Supreme Court has relied upon case law interpreting Title VII in construing the Minnesota Human Rights Act. *Hubbard v. United Press Intern., Inc.,* 330 N.W.2d 428, 441 (Minn.1983).

Cir.1981)). "The employer's actions must have been taken with the intention of forcing the employee to quit." *Id.*

■ Plaintiff alleges that he was forced to resign as a result of the allegedly racist climate at the MWCC, and as a result of his allegedly race-based conflicts with co-workers. As previously stated, the Court finds that the evidence adduced by the plaintiff fails to prove the existence of a racially hostile work environment. Furthermore, plaintiff had been out of the MWCC workforce for over 17 months prior to the date he claims he was forced to resign.[6] The Court is unaware of any case in which one could be subject to a constructive discharge *in absentia.* The plaintiff simply chose not to return to a workplace from which he had been absent for nearly one and one-half years. Consequently, plaintiff has failed to demonstrate a prima facie constructive discharge.

In sum, the Court finds that the plaintiff has failed to prove his charges of racial discrimination. This conclusion is consistent with the jury's verdict for each defendant on the discrimination claims arising under § 1983. Because the plaintiff has failed to establish a prima facie case of race discrimination against the MWCC, it is unnecessary to address plaintiff's aiding and abetting claims against defendants Vania, Kellesvig, Krantz, Tatge, and Schumacher.

■ Plaintiff's final assertion is that the MWCC engaged in reprisal discrimination. Section 363.03, subdivision 7, of the Act makes it an unfair employment practice for an employer to engage in reprisals against any person who has filed a charged, testified, assisted, or participated in any manner in an investigation or hearing under the Act.[7] The *McDonnell Douglas* framework is applicable to a reprisal claim. *Graham v. Special School Dist. No. 1*, 472 N.W.2d 114, 119 n. 7 (Minn.1991). Accordingly, the plaintiff must first establish a prima facie case which requires (1) statutorily protected conduct; (2) adverse employment action by the employer; and (3) a causal connection between these two acts. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 444 (Minn.1983).

■ Plaintiff asserts that the following acts were reprisals in response to his race discrimination complaints: he was disciplined more severely following the conflict with defendant Schumacher, he was required to provide weekly medical reports of his condition during his disability leave, and he was constructively discharged. The Court has already determined that the discipline imposed on plaintiff was not discriminatory. Neither was it retaliatory. Because plaintiff has not demonstrated a constructive discharge, this allegation provides no evidence of reprisal discrimination.

Plaintiff also asserts that the MWCC harassed plaintiff's "friendly" witnesses and attempted to dissuade them from testifying in plaintiff's behalf. Two MWCC employees, Joseph Sinnott and Floyd Mattson, testified. The Court heard their testimony in full, and it was given careful consideration. Their testimony was diffuse, and the Court cannot find that they were harassed or

---

**6.** On September 11, 1986, plaintiff was involved in an automobile accident unrelated to his employment at the MWCC. Between September 11, 1986, and his resignation on February 1, 1988, plaintiff did not work, and had limited contact with MWCC employees and supervisors. This contact primarily concerned plaintiff's acquisition of disability benefits and plaintiff's responsibility to provide medical documentation of his continued disability.

**7.** Section 363.03, subdivision 7, states, in relevant part:

It is an unfair discriminatory practice for any employer ... or employee or agent thereof to intentionally engage in any reprisal against any person because that person:
(1) Opposed a practice forbidden under this chapter or has filed a charge, testified, assist-

ed, or participated in any manner in an investigation, proceeding or hearing under this chapter; or
(2) Associated with a person or group of persons who ... are of a different race....

A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment. It is a reprisal for an employer *to do any of the following with respect to an individual because that individual has engaged in the activities listed in clause (1) or (2):* refuse to hire the individual; depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status....

persuaded to change their testimony in this case. They did not indicate that they had been penalized for their testimony. Nothing in their testimony demonstrates reprisal against the plaintiff. Because the Court finds no evidence of reprisal discrimination on the part of the MWCC, it is unnecessary to address plaintiff's aiding and abetting claims against defendants Vania, Kellesvig, Krantz, Schumacher, and Tatge.

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Judgment shall be entered for the Metropolitan Waste Control Commission and for defendants George Vania, David Kellesvig, Walter Krantz, Roger Tatge, and Dennis Schumacher on Count I of plaintiff's amended complaint.

2. Judgment shall be entered for each defendant, pursuant to the jury's verdict, dated November 7, 1991.

LET JUDGMENT BE ENTERED ACCORDINGLY.