Julienne GOINS, Appellant,

v.

WEST GROUP Respondent.

No. CX–00–706.

Court of Appeals of Minnesota.

Nov. 21, 2000.

Joni M. Thome, Attorney at Law, Bloomington, for appellant.

Patricia A. Bloodgood, Susan E. Ellingstad, Lockridge, Grindal, Nauen, P.L.L.P., Minneapolis, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, FOLEY, Judge,* and MULALLY, Judge.**

## OPINION

STONEBURNER, J.

Appellant Julienne Goins challenges the district court's grant of summary judgment to her employer on her claims of intentional sexual orientation discrimination and hostile work environment under the Minnesota Human Rights Act. Because the district court erred in its application of the law to the sexual orientation discrimination claim and because material questions of fact exist with regard to the hostile work environment claim, we reverse. We also reverse the district court's order compelling Goins to answer questions regarding her anatomy because such discovery is not relevant to her claims.

## FACTS

When appellant Goins was born on April 15, 1973 she was designated "male" on her birth certificate. Through childhood and adolescence Goins was considered male, but she was confused about her sexual identity. In 1994 after counseling, she began taking female hormones. By the summer of 1995 Goins began to consistently present herself as female. In October 1995 a Texas court granted her petition to legally change her name from Justin Travis Goins to Julienne Hannah Goins. The Texas court order states that it constitutes authority for a change of gender from "genetic male" to "reassigned female" on any and all documents, including but not limited to Goins's birth certificate and Texas driver's license.[1] Although Goins has not had elective surgery to alter any part of her anatomy, the parties do not dispute that Goins sincerely and consistently identifies herself as female.

In May 1997 Goins began working for West Group in Rochester, New York, where she worked for five months without incident. During the summer of 1997 she visited West's Eagan facility on four occasions. She agreed to relocate to Minnesota and began working at the Eagan facility on October 6, 1997.

Before Goins started work at Eagan, a group of approximately four women told Lewis Freeman, Director of Shared Services Human Resources for the Eagan facility, that they were uncomfortable with Goins using the women's restroom because of their belief that Goins is biologically male. There is no evidence that any of the complainants have ever been in the women's restroom at the same time as Goins. No one has ever alleged any inappropriate conduct by Goins in the restroom or elsewhere.

In response to the expressed concerns and Freeman's own belief that Goins is biologically male, Freeman immediately told Goins that she could not use the women's restrooms. She was directed to use

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. This court does not decide whether the Texas court order granting Goins a name change is determinative of her legal sex, but considers the order as evidence that Goins has self-identified as a woman since 1995.

either of the facility's two single-occupancy restrooms, which are not designated as men's or women's restrooms. One of these restrooms is located in the lobby of the building where Goins worked and the other is in a nearby building.

Goins opposed the directive and voiced her disagreement. She proposed education and communication with co-workers to address their concerns. She refused to use the designated restrooms, partially in protest and partially because she found the restrooms inconvenient and dirty. Goins refrained from eating or drinking during the day to avoid having to use any restroom. Occasionally Goins used the women's restroom. In November 1997 Freeman warned Goins that if she continued to use the women's restroom she would be disciplined. Freeman also told supervisors that it was incumbent upon them to enforce the restroom policy.

Goins wrote to a West Human Resources representative in Rochester, New York that she felt harassed at the Eagan facility because of the restroom policy. The Rochester representative referred her back to the Eagan supervisors, who were already aware of the policy and to whom she had already expressed her complaints of discrimination and harassment.

West does not dispute that Goins was qualified to perform her work. In fact, on January 12, 1998 West offered Goins a promotion and a $4,000 raise. But Goins, who had received another job offer on the same day, declined and submitted her resignation. In her written resignation Goins stated that although she left her employment with West voluntarily, she resigned because of the unwelcome, stressful environment created by the restroom policy.

Goins brought this lawsuit against West alleging sexual orientation discrimination and hostile work environment in violation of the Minnesota Human Rights Act. The district court granted West's motion to compel Goins to answer discovery regarding her genitals and later granted West's motion for summary judgment on the dis-

crimination and hostile work environment claims. Goins appeals the grant of summary judgment to West and the order compelling discovery.

## ISSUES

1. Did the district court err in granting West's motion for summary judgment on Goins's intentional sexual orientation discrimination claim under the Minnesota Human Rights Act?

2. Did the district court err in granting West's motion for summary judgment on Goins's hostile work environment claim under the Minnesota Human Rights Act?

3. Did the district court abuse its discretion in granting West's motion to compel Goins to respond to discovery about her genitals?

## ANALYSIS

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that one party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). This court will affirm a grant of summary judgment if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn.App.1995).

### I.

Goins contends that the district court erred in granting summary judgment on her sexual orientation discrimination claim because it misapplied the relevant law. We agree. The Minnesota

Human Rights Act (MHRA) prohibits an employer from discriminating against an employee in terms, conditions, facilities, or privileges of employment based on sexual orientation. Minn.Stat. § 363.03, subd. 1(2)(c) (1998). The statute defines sexual orientation to include:

> having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness.

Minn.Stat. § 363.01, subd. 45 (1998). The parties agree that Goins is a member of this protected class.

The district court rejected an analysis of a direct claim of discrimination and used the *McDonnell Douglas v. Green* formula for establishing a prima facie case of indirect discrimination. The district court concluded that, in order to make a prima facie case of indirect discrimination, Goins had to show: (1) that she is a member of a protected class; (2) that she was qualified to use the women's restroom; and (3) that adverse employment action was taken against her based on her status as a member of the protected class. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Diez v. Minnesota Mining & Mfg.*, 564 N.W.2d 575, 580 (Minn.App.1997), *review denied* (Minn. Aug. 21, 1997).

In applying *McDonnell Douglas*, the district court focused on whether Goins is "qualified" to use the women's restroom. After a thorough discussion of non-jurisdictional case law on same-sex marriage,[2] the district court found that a person's sex remains as designated on the birth certificate, based on genital assessment at birth. *See M.T. v. J.T.*, 140 N.J.Super. 77, 355 A.2d 204, 210–11 (Ct.App.Div.1976); *Anonymous v. Anonymous*, 67 Misc.2d 982, 325 N.Y.S.2d 499, 500 (N.Y.Sup.Ct.1971); *In re Ladrach*, 32 Ohio Misc.2d 6, 513 N.E.2d 828, 832 (Prob.Ct.1987); *Littleton v. Prange*, 9 S.W.3d 223, 230–31 (Tex.App. 1999). The district court reasoned that because Goins was designated male on her birth certificate and admits she has not undergone surgery, she must be biologically male, and therefore "unqualified" to use the women's restroom despite her undisputed female self-image. Finding her unqualified to use the women's restroom, the district court concluded West had not taken adverse action against Goins based on her status as a member of a protected class and that, therefore, Goins failed to make a prima facie case of indirect discrimination.[3] The district court erred by applying the formula for indirect discrimination because Goins has established a direct claim of discrimination under the MHRA.

The MHRA is unique in prohibiting employment discrimination on the basis of self-image or identity not traditionally associated with one's biological maleness or femaleness. *See* Minn.Stat. § 363.01, subd. 45. The statute prohibits discrimination on the basis of the inconsistency between anatomy and self-image. West denied Goins use of the women's restroom in disregard of her undisputed female self-image. The district court agreed with West and held that, as a matter of law,

---

**2.** The legislature has clearly stated that the prohibition on sexual orientation discrimination contained in the MHRA shall not be construed to authorize same-sex marriage. Minn.Stat. § 363.021(4) (1998). Right-to-marry cases rely primarily on the definition of marriage as an institution solidified by reproductive and sexual functioning tenets, and are not relevant to the determination of restroom use in the workplace under the MHRA.

**3.** The district court referenced an employer's need to regulate misconduct and voyeurism as justification for basing restroom use on genital anatomy rather than self-image. There is no evidence, however, to support a conclusion that employees whose self-image conflicts with anatomical male or female features are likely to be voyeurs or commit inappropriate acts. There is no evidence of any misconduct, questionable motivation or doubt about Goins's true self-identity. Goins is not presenting herself as a man who merely likes to dress as a woman. The presumptions relied on by the district court illustrate the need for a more fully developed evidentiary record.

anatomy alone makes Goins a man and that her self-image is irrelevant to the issue of restroom use. The district court held that Goins can only use the women's restroom by demonstrating anatomy consistent with self-image. The MHRA, however, does not require an employee to eliminate an inconsistency between self-image and anatomy; it protects the employee from discrimination based on such an inconsistency. Goins has made a prima facie case of direct discrimination under the MHRA by showing that she was denied the use of a workplace facility based on the inconsistency between her self-image and her anatomy. The burden-shifting framework of *McDonnell Douglas* was not reached by the district court but was addressed by the parties. Once Goins made a prima facie case, the burden shifted to West to articulate a legitimate, nondiscriminatory reason for denying Goins's use of the women's restroom. West asserts that it has a legitimate, nondiscriminatory reason to prohibit Goins from using the women's restroom. West argues that Goins is a man and that an employer may legitimately segregate restrooms by sex. *See* Minn.Stat. § 363.02, subd. 4 (1998) (excepting restrooms from prohibition against sex discrimination in a place of public accommodation). Even if the exception for sex discrimination regarding restroom use applies to restrooms in the workplace,[4] the exception is for sex discrimination, not for sexual orientation discrimination. West argues that it legitimately discriminated on the basis of sex. But Goins argues that West illegally discriminated on the basis of *sexual orientation*. Given the unambiguous wording of the MHRA, West has failed, at this stage of the litigation, to present a non-discriminatory, legitimate defense to Goins's prima facie case of *sexual orientation* discrimination.

West argues that it is not required to accommodate Goins's desire to use the women's restroom, relying on dictum in *Cruzan v. Special School District No. 1, Department of Human Rights,* File No. 31706 (August 26, 1999). This administrative decision, while not precedent, expresses the enforcement agency's view that an employer who allows restroom use based on self-image rather than anatomy does not thereby commit a violation as to other workers. The MHR Commission dismissed the claim of a coworker who objected to use of the women's restroom by an employee who had changed self-identity from male to female. In dictum, the MHR Commission stated that the MHRA "does not require accommodation because of sexual orientation." Neither Goins nor the subject of the complaint in Cruzan requested an accomodation from the employer. The Commission did not elaborate on the issue of accommodation. West and the district court incorrectly interpreted this dictum as a ruling by the Commission that an employer can deny use of the women's restroom to an employee who has changed identity from male to female. Cruzan does not provide West with a legitimate basis for denying Goins use of the women's restroom facility.

Because Goins made a prima facie case of direct sexual orientation discrimination in the workplace and West failed to assert a legitimate nondiscriminatory reason for its policy, summary judgment was inappropriate.

## II.

The district court's grant of summary judgment on the hostile work environment claim was based primarily on the erroneous conclusion that Goins failed to make a prima facie case of sexual orientation discrimination, which led the district court to conclude that Goins failed to make

---

4. Neither party disputes an employer's right to maintain separate men and women's rest-rooms in the workplace.

a prima facie case of hostile work environment.

■ The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment was based on sexual orientation; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take timely and appropriate remedial action. *See Williams v. Metropolitan Waste Control Comm'n,* 781 F.Supp. 1424, 1426 (D.Minn. 1992).

■ The conduct must be so severe or pervasive that it alters the conditions of employment and creates an abusive work environment. *Johns v. Harborage I, Ltd.,* 585 N.W.2d 853, 861 (Minn.App.1998). The work environment must be "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so," *Id.* (quotation omitted). The totality of the circumstances, including the "nature, frequency, intensity, location, context, duration, and object or target" of the conduct, determines whether the severity of the conduct rises to a hostile environment. *Klink v. Ramsey County by Zacharias,* 397 N.W.2d 894, 901 (Minn. App.1986), *review denied* (Minn. Feb. 13, 1987), *reversed on other grounds by Cummings v. Koehnen,* 568 N.W.2d 418 (Minn. 1997). The district court found as a matter of law that West's conduct was not sufficiently severe to create a hostile work environment. This conclusion was based, in part, on the district court's factual determination that West acted reasonably.

Goins disagrees that the policy of excluding her from the women's restroom was reasonable and alleges that West stigmatized her in the workplace by denying her use of the women's restroom. It is undisputed that coworkers monitored and reported on Goin's restroom use and discussed her biological status. Goins states

that she worked in an environment of "frequent staring and glaring." West threatened Goins with discipline if she continued to use the women's restroom and required supervisors to monitor her restroom use. Goins alleges that she refrained from eating or drinking during the workday to avoid using the restroom and that she eventually sought and accepted other employment to escape the hostile environment at West. The evidence in this case raises a genuine issue of material fact of whether the harassment was sufficient to give rise to a hostile work environment, making summary judgment inappropriate. *See Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1379 (8th Cir.1996) (finding genuine issue of material fact in harassment case precluded summary judgment); *see also Strauss v. Thorne,* 490 N.W.2d 908, 911 (Minn.App.1992), *review denied* (Minn. Dec. 15, 1992) ("If reasonable persons might draw different conclusions from the evidence presented, summary judgment should be denied.") (citation omitted).

■ The district court also found that Goins did not report the harassment to her supervisors and therefore West could not have known that Goins considered the working environment hostile. *See Johns,* 585 N.W.2d at 862. An employer is liable for sexual harassment if the employer had actual or constructive knowledge of a hostile working environment and took no prompt and adequate remedial action. *Id.* There is evidence in the record that West had actual knowledge that Goins considered the work environment hostile. West knew that employees discussed Goins's biological identity and monitored her bathroom use. Goins alleges that she was outspoken in her complaints to management about the restroom policy. There is at least a genuine issue of material fact as to whether West had actual or constructive knowledge of a hostile work environment, making summary judgment inappropriate.

### III.

■ Goins contends that the district court erred in granting West's motion to

compel her to answer discovery regarding her genitals and to provide her medical history. "[T]he trial judge has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed." *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn.1990). Information which can have no possible bearing on the determination of the action on its merits is not discoverable. *Jeppesen v. Swanson,* 243 Minn. 547, 560, 68 N.W.2d 649, 657 (1955). The parties agree that Goins's female self-image is inconsistent with her anatomy. The MHRA does not place a burden on employees to prove consistency between self-image and anatomy, it protects an employee from discrimination based on the inconsistency. The district court found the requested discovery relevant because it held that only by proving she had female genitals (or at least an absence of male genitals) could Goins qualify to use the women's restroom. Because we have rejected that standard for establishing a prima facie case, the discovery relating to Goins's genitals is irrelevant and the discovery order is reversed.

## DECISION

An employee who is denied use of a workplace restroom facility because of an inconsistency between the employee's female self-image and the employee's anatomy states a prima facie case of sexual orientation discrimination under the Minnesota Human Rights Act. Material fact questions exist concerning the employee's claim of a hostile work environment. Summary judgment on the discrimination claim and the order compelling discovery are inappropriate.

**Reversed and remanded for trial.**