**Julienne GOINS, Respondent,**

v.

**WEST GROUP, petitioner, Appellant.**

No. CX–00–706.

Supreme Court of Minnesota.

Nov. 29, 2001.

Rehearing Denied Dec. 31, 2001.

---

Susan E. Ellingstad, Patricia A. Bloodgood, Minneapolis, for appellants.

Joni M. Thome, Minneapolis, for respondents.

Robert R. Reinhart and Erik T. Nelson, Minneapolis, for amicus curiae Minnesota Chamber of Commerce.

Philip A. Duran, Minneapolis, for amicus curiae Outfront Minnesota and Minnesota Lavender Bar Association.

James H. Manahan, Mankato, for amicus curiae National Center Lesbian Rights et al.

## OPINION

RUSSELL A. ANDERSON, Justice.

West Group (West) has obtained review of a decision of the court of appeals reversing summary judgment entered in its favor and remanding for trial respondent Julienne Goins' claims of discrimination. Goins claims that West discriminated against her based upon her sexual orientation by designating restrooms and restroom use on the basis of biological gender, in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.03, subd. 1(2) (2000). Goins also claims that such discrimination created a hostile work environment. We hold that an employer's designation of employee restroom use based on biological gender is not sexual orientation discrimination in violation of the MHRA. We also conclude that Goins has not established a factual basis for the hostile work environment claim. We reverse the court of appeals and reinstate the judgment entered by the district court dismissing Goins' claims.

Respondent Julienne Goins was designated male at birth and given the name Justin Travis Goins, but Goins was confused about that sexual identity throughout much of childhood and adolescence. Since 1994, Goins has taken female hor-

mones and, with the exception of one occasion, has presented publicly as female since 1995. In October 1995, a Texas court granted Goins' petition for a name change as well as a request for a gender change "from genetic male to reassigned female." Goins identifies as transgender or "trans-identified."[1]

In May 1997, Goins began full-time work with West in its Rochester, New York, office. Goins transferred to West's Minnesota facility in Eagan in October 1997. Prior to the actual relocation, Goins visited the Eagan facility and used the employee women's restrooms. A few of West's female employees observed Goins' use of the women's restrooms and, believing Goins to be biologically male, expressed concern to West supervisors about sharing a restroom with a male. This concern was brought to the attention of West's director of human resources who, in turn, discussed the concern with other human resources personnel and legal counsel. West's director of human resources considered the female employees' restroom use complaint as a hostile work environment concern and decided to enforce the policy of restroom use according to biological gender. After considering the options, the director decided that it would be more appropriate for Goins to use either a single-occupancy restroom in the building where she worked but on a different floor or another single-occupancy restroom in another building.

The decision on restroom use was conveyed to Goins by the director of human resources in the morning of her first day of work at the Eagan facility. The director explained that West was attempting to accommodate the conflicting concerns of Goins and the female employees who ex-pressed uneasiness about sharing their restroom with a male. Goins objected, proposing instead education and training regarding transgender individuals so as to allay female coworker concerns. She also refused to comply with the restroom use policy, in protest in part, and continued to use the employee women's restroom closest to her workstation. In November 1997, Goins was threatened with disciplinary action if she continued to disregard the restroom use policy. In January 1998, Goins tendered her resignation, declining West's offer of a promotion and substantial salary increase, and accepted a job offer elsewhere. In her letter of resignation, Goins stated that West's human resources department had treated her in a manner that had caused undue stress and hostility.

Goins subsequently commenced an action in district court, alleging that West had engaged in discrimination based on sexual orientation in the enforcement of a policy that denied her access to the employee women's restroom. Goins further asserted that West's discriminatory treatment, as well as conduct of West employees, created a hostile work environment. The district court granted West's motion for summary judgment, concluding that Goins had failed to make a prima facie case on either claim. On appeal, the court of appeals reversed, concluding that Goins had established a prima facie showing of sexual orientation discrimination and that there were factual allegations with regard to the hostile work environment claim sufficient to raise genuine issues of material fact precluding summary judgment. *Goins v. West Group*, 619 N.W.2d 424, 429–30 (Minn.App.2000).

---

1. Transgender people seek to live as a gender other than that attributed to them at birth but without surgery. Susan Etta Keller, *Operations of Legal Rhetoric: Examining Transsexual and Judicial Identity*, 34 Harv. C.R.-C.L. L.Rev. 329, 332 (1999). Because Goins refers to herself as female, we will refer to her in this opinion using feminine pronouns.

■ Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001); *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974). On appeal from a summary judgment, the reviewing court determines whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Funchess*, 632 N.W.2d at 672.

## I.

■ The MHRA prohibits sexual orientation discrimination in the workplace. Minn.Stat. § 363.03, subd. 1(2)(c) (2000). The definition of "sexual orientation" includes "having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness." Minn.Stat. § 363.01, subd. 41a (2000). The parties agree that Goins consistently presents herself as a woman. Her discrimination claim is predicated on her self-image as a woman that is or is perceived to be inconsistent with her biological gender. Accordingly, for purposes of Goins' discrimination claim, her self-image is inconsistent with her biological gender. *Cf. Winslow v. IDS Life Ins. Co.*, 29 F.Supp.2d 557, 560 (D.Minn.1998) (insurance applicant perceived as being disabled has a disability for purposes of the Americans with Disabilities Act).

■ Employment discrimination may be established under either a disparate impact or disparate treatment theory. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719 n. 1 (Minn.1986). Goins alleged disparate treatment. When a plaintiff alleges disparate treatment, liability " 'depends on whether the protected trait * * * actually motivated the employer's decision.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). The plaintiff's protected trait must have " 'actually played a role in the [employer's decision-making] process.' " *Id.* Proof of discriminatory motive is critical in a disparate treatment claim. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Of course, proof of a discriminatory motive may be established by direct evidence. *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n. 16 (11th Cir.1982).

■ Direct evidence of an employer's discriminatory motive shows that the employer's discrimination was purposeful, intentional or overt. *Hardin*, 691 F.2d at 1369 n. 16; *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir.1980) (distinguishing between discrimination which is "relatively open and easy to recognize" and discrimination which must be demonstrated by inference). Courts have found direct evidence of discriminatory motive where a statement or a policy is discriminatory on its face. *See, e.g., Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (finding that a collective bargaining agreement constituted direct evidence of discrimination because the agreement allowed airline captains displaced for any reason other than age to bump a less senior flight engineer); *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 61 (1st Cir.2000) (finding direct evidence of discriminatory motive where manager admitted that age was one of three criteria used to determine which employees would be retained and which would not); *Hardin*, 691 F.2d at 1369 n. 16 (finding direct evidence of discrimination where a sheriff stated that he would not consider

hiring women for seven open deputy positions). *Cf. Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 451–52 (7th Cir. 1998) (finding no direct evidence of discriminatory motive where the employer did not state that termination was based on age and where employer's statements did not relate to his motivation as the decisionmaker in terminating employee).

The court of appeals concluded that Goins "made a prima facie case of direct discrimination under the MHRA by showing that she was denied the use of a workplace facility based on the inconsistency between her self-image and her anatomy." *Goins*, 619 N.W.2d at 429. The evidence, however, was that West's policy of restroom designation and use was based on gender. In that Goins sought and was denied access only to those restrooms designated for women, West's enforcement of that policy was likewise grounded on gender.

 Goins does not argue that an employer engages in impermissible discrimination by designating the use of restrooms according to gender. Rather, her claim is that the MHRA prohibits West's policy of designating restroom use according to biological gender, and requires instead that such designation be based on self-image of gender. Goins alleges that West engaged in impermissible discrimination by denying her access to a restroom consistent with her self-image of gender. We do not believe the MHRA can be read so broadly. As the district court observed, where financially feasible, the traditional and accepted practice in the employment

setting is to provide restroom facilities that reflect the cultural preference for restroom designation based on biological gender. To conclude that the MHRA contemplates restrictions on an employer's ability to designate restroom facilities based on biological gender would likely restrain employer discretion in the gender designation of workplace shower and locker room facilities, a result not likely intended by the legislature. We believe, as does the Department of Human Rights, that the MHRA neither requires nor prohibits restroom designation according to self-image of gender or according to biological gender. *See Cruzan v. Special Sch. Dist. No. 1*, No. 31706 (Dep't of Human Rights Aug. 26, 1999). While an employer may elect to offer education and training as proposed by Goins, it is not for us to condone or condemn the manner in which West enforced the disputed employment policy. Bearing in mind that the obligation of the judiciary in construing legislation is to give meaning to words accorded by common experience and understanding, to go beyond the parameters of a legislative enactment would amount to an intrusion upon the policy-making function of the legislature. Accordingly, absent more express guidance from the legislature, we conclude that an employer's designation of employee restroom use based on biological gender is not sexual orientation discrimination in violation of the MHRA.[2]

 Even though West's restroom policy is permissible under the MHRA, Goins could still establish discriminatory

2. Nonetheless, in concluding that the MHRA does not cover workplace restroom designation and use according to biological gender or according to the employee's self-image of gender, we by no means imply that workplace restrooms are, in other respects, beyond the coverage of the Act. Typically, workplace restroom discrimination claims have more to do

with an employer's obligation to provide appropriate and sanitary facilities. *See, e.g., DeClue v. Central Illinois Light Co.*, 223 F.3d 434 (7th Cir.2000); *Lynch v. Freeman*, 817 F.2d 380 (6th Cir.1987). While the MHRA does not go so far as to protect Goins' choice of restroom use, it does protect her right to be provided an adequate and sanitary restroom.

motive by circumstantial evidence. *See Feges v. Perkins Restaurants,* 483 N.W.2d 701, 710 (Minn.1992); *Sigurdson,* 386 N.W.2d at 720. Disparate treatment claims based on circumstantial evidence are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] The *McDonnell Douglas* scheme allocates the burden of producing evidence between the parties and establishes the order of presentation of proof. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. A plaintiff must establish a prima facie case of discriminatory motive. If the plaintiff makes this showing, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the employer articulates such a reason, the plaintiff must then put forward sufficient evidence to demonstrate that the employer's proffered explanation was a pretext for discrimination. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 . The burden of persuasion, however, remains with the plaintiff at all stages. *Id.*

 In the context of a discriminatory discharge claim, to establish a prima facie case as that term is used in *McDonnell Douglas,* a plaintiff typically must demonstrate that she " '(1) is a member of [a] protected class; (2) was qualified for the position from which she was discharged; and (3) was replaced by a non-member of the protected class.' " *Hoover v. Norwest Private Mortgage Banking,* 632 N.W.2d 534, 542 (Minn.2001) (quoting *Feges,* 483

N.W.2d at 711). The *McDonnell Douglas* elements "vary with the circumstances of the alleged discrimination." *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992) (citing *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817).

Under the circumstances presented here, Goins must demonstrate that (1) she is a member of a protected class; (2) she is qualified—which, in the context of the issues presented in this case, means that she must establish that she is eligible to use the restrooms designated for her biological gender; and (3) West denied her access to such a restroom. Under the *McDonnell Douglas* framework, if Goins fails to establish any one of the elements of the prima facie case, no additional analysis is required and West is entitled to dismissal of her claim as a matter of law.

The MHRA prohibits an employer, because of sex or sexual orientation, from discriminating against a person "with respect to * * * conditions, facilities, or privileges of employment."[4] Minn.Stat. § 363.03, subd. 1(2)(c). The MHRA defines "sexual orientation" as including "having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness." *Id.* § 363.01, subd. 41a. Goins alleges that she has such a self-image and West does not contend that she is not a member of the class protected by this statutory provision. Accordingly, Goins has successfully made out the first element of her prima facie case.

---

**3.** We adopted the *McDonnell Douglas* framework in *Danz v. Jones,* 263 N.W.2d 395 (Minn.1978) to analyze disparate treatment claims brought under the MHRA. We often have applied principles developed in Title VII adjudications because of substantial similarities between Title VII and the MHRA. *See, e.g., Sigurdson,* 386 N.W.2d at 719.

**4.** Here, the issue is Goins' use of West's restroom facilities. It is hardly open to debate that the use of employee restrooms qualifies as a condition, facility, or privilege of employment.

■ Having established that she is a member of the class protected by the MHRA, Goins next bears the burden of establishing that she is qualified. As discussed above, West's designation of restroom facilities based solely on biological gender does not violate the MHRA. Thus, to meet that burden, Goins must establish that she was eligible to use the restrooms that West designated for use according to biological gender.[5] On the record before us, she has not done so. As a result, she has failed to make out the second element of her prima facie case under *McDonnell Douglas*. Having failed to establish that she was qualified, no further inquiry is necessary. Goins' disparate treatment sexual orientation discrimination claim fails as a matter of law.

## II.

■ Goins also claims that West created a hostile work environment based on her sexual orientation. To prevail on a hostile work environment claim, a plaintiff must establish that (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on membership in a protected group; (4) the harassment affected a term, condition or privilege of her employment; and (5) the employer knew of or should have known of the harassment and failed to take appropriate remedial action. *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999). Even if a plaintiff demonstrates discriminatory harassment, such conduct is not actionable unless it is "so severe or pervasive" as to " 'alter the conditions of the [plaintiff's] employment and create an abusive working environment.' " *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). The objectionable environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In ascertaining whether an environment is sufficiently hostile or abusive to support a claim, courts look at the totality of the circumstances, including the " 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).

■ Assuming that the MHRA contemplates a hostile work environment claim based on sexual orientation and that Goins otherwise carried her burden,[6] we find that summary judgment was appropriate. Goins' hostile work environment

---

**5.** The record is not clear whether Goins was ever denied access to the men's restroom.

**6.** While the MHRA does not explicitly provide for a hostile work environment claim based upon sexual orientation discrimination, a hostile work environment claim may be based upon sexual harassment. Minn.Stat. § 363.01, subd. 41(3). We have recognized that sexual harassment is a form of sex discrimination, *Continental Can Co., Inc. v. State*, 297 N.W.2d 241, 248–49 (Minn.1980), but we have not recognized sexual harassment as a form of sexual orientation discrimination. The MHRA is to be construed liberally, however, with reference to federal law. Title VII, while not including claims based on sexual orientation discrimination, does include a hostile work environment claim for "discriminatory harassment *so severe or pervasive* as to alter the conditions of employment and create a hostile working environment." *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999). Goins did not separately plead a hostile work environment claim, but she did allege in her sexual orientation discrimination

claim was predicated on allegations that she was the subject of scrutiny, gossip, stares, glares and restrictions on the use of the restroom near her workstation because of her sexual orientation. The restroom policy, as we have concluded, was not based on sexual orientation. As for the remaining allegations, we agree with the district court's conclusion that Goins' claim fails because the alleged conduct of co-workers, however inappropriate, was not of the type of severe or pervasive harassment required to sustain an actionable hostile work environment claim. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1249 (11th Cir.1999) (supervisor's constant following and staring not sufficiently severe or pervasive); *Gonzales v. Sea–Mar, Inc.,* 99 F.Supp.2d 753, 755 (E.D.La.2000) (co-workers' offensive and boorish comments together with glaring insufficient); *Bishop v. Nat'l R.R. Passenger Corp.,* 66 F.Supp.2d 650, 663–66 (W.D.Pa.1999) (staring, leering and offensive comments insufficient).

We therefore reverse the court of appeals decision and reinstate judgment for West on all claims.

Reversed and judgment reinstated.

claim that West created a hostile work environment.

PAGE, Justice (concurring specially).

I concur in the result reached by the court. I write separately to clarify one point with respect to the court's conclusion that Goins has failed to establish that "she is eligible to use the restrooms designated for her biological gender." *Supra* p. 725. To satisfy this element, Goins must establish that she is biologically female. Because she has failed to do so, her disparate treatment discrimination claim fails as a matter of law.

ANDERSON, PAUL H., Justice (concurring specially).

I join in the special concurrence of Justice Page.