*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1044**

Pat Ritter,
Appellant,

vs.

Auntie Ruth's Animal Care and Wellness, Inc.
d/b/a Auntie Ruth's Furry Friends,
Respondent.

**Filed February 9, 2015
Reversed and remanded
Stauber, Judge**

Hennepin County District Court
File No. 27CV1315423

Joni M. Thome, Frances E. Baillon, Baillon, Thome, Jozwiak & Wanta, L.L.P., Minneapolis, Minnesota (for appellant)

Sally Ferguson, Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant challenges the district court's grant of summary judgment and dismissal of her age-discrimination claim under the Minnesota Human Rights Act (the MHRA),

arguing there are genuine issues of material fact that preclude summary judgment. We reverse and remand for further proceedings.

## FACTS

Beginning in December 2011, appellant Pat Ritter was employed as a general manager of respondent Auntie Ruth's Animal Care and Wellness, Inc., d/b/a Auntie Ruth's Furry Friends (ARFF), an upscale boarding kennel for dogs and cats. In 2012, the business was sold to Annie Haubenhofer and Mike McKinley, who asked all current employees to reapply for their jobs. ARFF rehired all the employees, including Ritter, subject to a 90-day probationary period.

During the hiring process, Ritter advised Haubenhofer that questions on the application about the age of the applicant and the applicant's high school graduation date were improper and should be removed from the application. ARFF removed those questions from the application.

During her rehiring interview, Haubenhofer asked Ritter to take a $5.00 per hour cut in pay. Haubenhofer told Ritter that she intended to take over some of Ritter's duties because Haubenhofer was "closer in age" and could "relate better" to younger employees. Ritter told Haubenhofer that she would not take a pay cut, and Haubenhofer asked her how old she was and when she planned to retire. Ritter stated that she was 61 years old and did not intend to retire. At the time, Haubenhofer was 29 and McKinley was 28 years old. Despite these questions, Ritter was rehired to her position as general manager without a reduction in pay.

As general manager, Ritter advised Haubenhofer and McKinley about various business practices because they were relatively inexperienced; both claim to have respected and listened to Ritter's advice. But Ritter was troubled by a seeming emphasis on her age, based on comments made by Haubenhofer. Ritter stated that Haubenhofer complained every time she wrote an insurance premium check for Ritter's health insurance, saying "[y]ou cost a lot" and "[w]e can't afford you." Ritter told her that she knew how premiums were set, and Haubenhofer replied, "By age." At various times, Haubenhofer allegedly told Ritter that she was old, ridiculed her wardrobe as being "from the 70s," and told her she was not close enough in age to the rest of the staff to relate to them. When Ritter advised Haubenhofer that she should not wear shorts to the office in violation of the employee handbook or display her tattoos, Haubenhofer told her it was a "generational thing." Haubenhofer also told Ritter on more than one occasion that there was a "generation gap" between Ritter and the other employees. Ritter estimated that she confronted Haubenhofer five to eight times about unprofessional behavior during her approximate 45 days of employment. Ritter also allegedly told McKinley that comments about age had to stop.

On August 7, 2012, Ritter heard "screaming" and a profanity-laced confrontation between Haubenhofer and McKinley near the front of the business. Other employees were upset by this confrontation, and Ritter agreed to speak to Haubenhofer about this conduct. Later, Ritter approached McKinley to discuss the confrontation and a mistake that Haubenhofer had made concerning a dog's medication. Haubenhofer entered the office and asked what the two were talking about. Ritter told Haubenhofer that she was

3

creating a "hostile work environment" and that they could not let their relationship issues affect the business. Ritter stated that Haubenhofer became very hostile and said "I don't care what you perceive, and I will not be chastised by you, and you need to find another job." Ritter understood this comment to mean that her employment was terminated. She later heard from other employees and the former owner of the business that Haubenhofer and McKinley said she had been fired.

In November 2012 and February 2013, ARFF contacted Ritter to see if she would be willing to return to the same position at the same pay and benefits. Ritter did not respond to the offers. After Ritter was terminated, ARFF hired a 43-year old woman to perform at least some of Ritter's duties. After the 43-year old replacement left, ARFF hired a 25-year old woman for the same position.

Ritter brought suit against ARFF, alleging age discrimination under the MHRA, Minn. Stat. §§ 363A.01-.43 (2014). ARFF moved for summary judgment, which the district court granted, concluding that Ritter had failed to establish a prima facie case of age discrimination. This appeal followed.

## DECISION

We review "a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law," while considering the evidence in the light most favorable to the nonmoving party. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). "Summary judgment is inappropriate when reasonable persons might draw different conclusions from the evidence presented." *Id.* (quotation omitted). "On a motion for

4

summary judgment, the district court must not decide issues of fact; rather, it must determine whether genuine issues of fact exist for trial." *Id.* "Weighing the evidence and assessing credibility on summary judgment is error." *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 320 (Minn. 2007). However, the district court "is not required to ignore its conclusion that a particular piece of evidence may have no probative value, such that reasonable persons could not draw different conclusions from the evidence presented." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997). The non-moving party must present specific facts to support allegations on which he has the burden of proof. *Bebo v. Delander*, 632 N.W.2d 732, 737 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).

Our review of the district court's memorandum suggests that the district court engaged in factfinding and made credibility determinations. Rather than viewing the evidence in the light most favorable to Ritter, the district court seemingly found Ritter's recitation of the facts less credible than that of ARFF, Haubenhofer, and McKinley. *See Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 329 (Minn. App. 2007) ("In selecting certain evidence over conflicting countervailing evidence; in ruling that [defendant's] countervailing evidence was either not believable or not reasonable; and in giving more weight to some evidence, the court usurped the precise functions reserved to the jury under our system of jurisprudence."), *review denied* (Minn. Aug. 21, 2007).

To move forward with her claim however, Ritter must establish a prima facie case of age discrimination; therefore, we review the district court's conclusion that she failed

to provide sufficient direct or circumstantial evidence to support her claim and withstand summary judgment.

Ritter alleges that ARFF discharged her from employment because of her age, an unfair employment practice under Minn. Stat. § 363A.08, subd. 2(2). A discrimination claim may be proved by either direct or circumstantial evidence. *Goins v West Group*, 635 N.W.2d 717, 722-24 (Minn. 2001). "Direct evidence of an employer's discriminatory motive shows that the employer's discrimination was purposeful, intentional or overt. Courts have found direct evidence of discriminatory motive where a statement or a policy is discriminatory on its face." *Id.* at 722 (citations omitted). A plaintiff may prove a direct-evidence case by presenting strong affirmative evidence of an employer's discriminatory motive. *Friend v. Gopher Co.*, 771 N.W.2d 33, 38 (Minn. App. 2009).[1] In doing so, a plaintiff may rely on both direct and circumstantial evidence. *Id.* at 40.

Ritter argues that there is sufficient direct evidence of discrimination to withstand a summary judgment motion, citing Haubenhofer's (1) consideration of Ritter's age "in many aspects of her employment"; (2) comments that Ritter would be unable to communicate with or relate to younger employees; (3) complaints about the cost of Ritter's insurance based on her age; (4) questions about when she planned to retire; (5) discussion of tattoos, in which she concluded that Ritter would not understand about

---

[1] "Direct evidence" has been called a "misnomer." *Id.* at 39. The direct evidence method requires either direct evidence or a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. *Id.* (quotation omitted).

tattoos because it was "a generational thing"; and (6) hiring practices, which resulted in a drop in the average age of employees between June 2012 and January 2014.

Generally, "stray remarks," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself" are not sufficient direct evidence of discriminatory intent. *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991) (quotation omitted). The district court concluded that Haubenhofer's remarks fit within these guidelines, and, relying on *Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998), noted that an employer may make reasonable inquiries about an employee's retirement plans. But the Eighth Circuit also acknowledged that "[s]ometimes retirement inquiries are so unnecessary and excessive – that is, unreasonable – as to constitute evidence of discriminatory harassment." *Id.*

On summary judgment, the district court must view evidence in the light most favorable to Ritter and thus, although Haubenhofer denies that she frequently alluded to a "generation gap" or a "generational thing," the district court must accept Ritter's testimony that this occurred. And Haubenhofer, as owner and CEO, was clearly a decision maker. While Haubenhofer's individual remarks may not each support a finding of age discrimination, Ritter's testimony suggests that the frequency of the comments was "unnecessary and excessive" or "unreasonable," particularly in light of the comparatively short time period of 45 days during which they took place. *See id.*

Although Ritter and Haubenhofer's final confrontation did not include remarks about Ritter's age, the incident mirrored previous confrontations that she had with Haubenhofer that ended with comments that Ritter would not understand an issue

7

because of her age. Although circumstantial in nature, the evidence presents a "convincing mosaic" of discrimination sufficient to withstand summary judgment. *See Friend*, 771 N.W.2d at 39-40 (stating that under the direct evidence method, discrimination may be proved by direct or circumstantial evidence). Viewing the evidence in the light most favorable to Ritter, she has provided direct evidence that suggests a discriminatory motive.

A plaintiff may also establish a prima facie case of discriminatory discharge with circumstantial evidence by showing that (1) she is a member of a protected class; (2) she was qualified for the position from which she was discharged; and (3) she was replaced by a non-member of the protected class. *Goins*, 635 N.W.2d at 723-24. ARFF acknowledged that Ritter was a member of a protected class and was well-qualified for her job.

The district court determined that Ritter failed to establish a prima facie case because she did not show that she was replaced by a non-member of the protected class. In making this determination, the district court discounted Ritter's testimony that she was replaced within weeks by a 43-year old woman, and later by a 25-year old woman. The district court considered testimony by another employee, who originally reported to Ritter and then reported to the new supervisor. This employee described the new hire as a replacement for Ritter as general manager. However, when asked if she would disagree with Haubenhofer's assessment that the replacement's duties were not the same as Ritter's, the employee responded, "No, not at all. Like I said, even with [Ritter], I don't know what all her duties were, so there's a lot of that I'm not aware of." The district

8

court's rejection of the employee's testimony depends on an assessment of both the employee's and Haubenhofer's credibility, factfinding that is not appropriate at the summary judgment stage. Viewing the testimony in the light most favorable to Ritter, she has met the non-onerous burden of establishing a prima facie case of discrimination. *See Dietrich*, 536 N.W.2d at 323.

Under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), once a plaintiff establishes a prima facie case of discrimination, an employer has the burden of producing a legitimate nondiscriminatory reason for an adverse employment action; and if such a reason is established, the plaintiff has to produce sufficient evidence to show that the employer's explanation was a pretext for discrimination. *Goins*, 635 N.W.2d at 724.

An employer's duty to articulate a "legitimate, nondiscriminatory reason" for discharge also has been described as not onerous. *Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 857-58 (8th Cir. 2008). ARFF asserted that Ritter was unhappy in her job and that this was a sufficient nondiscriminatory reason to terminate her employment. But Ritter also testified that she loved her job and that she was unhappy because of what she perceived to be ageist comments. When viewed in the light most favorable to Ritter and in the context of summary judgment, this testimony is sufficient to show that ARFF's reason may have been pretextual.

By reversing the district court's summary judgment, we do not comment on the strength of Ritter's case nor suggest an ultimate outcome. But the many disputed facts in

9

this record, which the parties acknowledged at oral argument, lead us to conclude that this matter is not ripe for summary judgment at this time.

**Reversed and remanded.**