*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0253**

Jeffrey P. Kirk,
Appellant,

vs.

State of Minnesota,
Department of Transportation,
Respondent.

**Filed September 8, 2015
Affirmed
Stauber, Judge**

St. Louis County District Court
File No. 69DU-CV-13-2652

Stephanie M. Balmer, Duluth, Minnesota (for appellant)

Lori Swanson, Attorney General, Kathryn A. Fodness, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant challenges the summary-judgment dismissal of his wrongful-employment-termination claim, arguing that the district court erred by determining that he failed to present sufficient evidence to (1) make a prima facie case of age

discrimination; (2) establish the necessary causal connection to sustain a whistleblower claim; and (3) prove that his employer failed to offer employment within his physical limitations in violation of workers' compensation statutes.  We affirm.

**FACTS**

Appellant Jeffrey P. Kirk worked for respondent State of Minnesota, Department of Transportation (MnDOT) as a fulltime transportation generalist.[1]  In the fall of 2012, appellant sustained a work-related back injury that prevented him from working.  By February 2013, appellant had exhausted his sick leave and was placed on unpaid medical leave.  He claims that after his injury he applied for, but was rejected from, other MnDOT jobs for which he was qualified.  In May 2013, appellant participated in a functional capacities evaluation (FCE) that determined he had permanent physical limitations.  MnDOT human-resources and workers' compensation employees met with appellant to discuss his limitations and to explore alternative employment opportunities. MnDOT determined there were no available positions, and appellant was informed that his employment would be terminated after 90 days.[2]  In April 2014, appellant's doctor determined that he had reached maximum medical improvement (MMI).  Even after MMI, appellant's injury prevented him from performing transportation generalist duties.

It is undisputed that, prior to appellant's injury, there was significant friction between him, his supervisor James Kielty, and two of his coworkers, T.M. and D.W. Appellant cites several conflicts with coworkers, and often reported them to management

---

[1] A transportation generalist performs construction and maintenance work, including snow removal.
[2] Kirk's employment was not officially terminated until nine months later.

and his union, alleging violations of seniority rules regarding overtime work. Appellant claims that T.M. and D.W. complained to Kielty about appellant's work and that Kielty then prohibited him from operating certain equipment. Appellant asserts that his complaints about Kielty to upper management were not addressed and that Kielty punished him for these complaints by forcing him to do manual labor, prohibiting him from attending trainings, and prohibiting him from operating certain pieces of equipment.

Appellant further alleges that his younger coworkers were given more favorable jobs and were not sanctioned when they damaged equipment. Appellant alleges that Kielty remarked that he was "getting to that age when you're just going to get hurt"; that "Kielty generated offensive conversations about his age"; and that his coworkers called him "old fart."

Appellant further asserts that he made numerous "whistleblower" reports, including: sexual harassment of a coworker; wage-and-hour violations; coworkers improperly claiming mileage; workplace hazards; and a 50-gallon oil spill into a river.

MnDOT took disciplinary action against appellant for various reasons, although he disputes the characterization of many of these incidents. In December 2008, appellant backed a piece of equipment into Kielty's personal truck and was issued a written reprimand for failing to report the incident and failing to use proper backing procedures. Appellant responds that he had to move the equipment quickly to avoid damage to it because there was a fire in a waste oil furnace, and he was instructed not to call the fire department. In October 2011, appellant received a written reprimand for damage to a work truck. Appellant claims that T.M. actually caused the damage; that the

3

investigation was insufficient; and that Kielty retaliated against him. In December 2011, appellant was given a one-day unpaid suspension, along with several other coworkers, for taking an extended break. Appellant claims that the investigation was flawed. MnDOT claims that these incidents were unrelated to appellant's termination.

In October 2013, appellant filed a complaint alleging that MnDOT violated (1) the Minnesota Human Rights Act (MHRA) by discriminating against him based on age and by failing to make reasonable accomodations; (2) the Minnesota Whistleblower Act (MWA); and (3) workers' compensation statutes. MnDOT moved for summary judgment, arguing that appellant did not provide evidence sufficient to establish a prima facie case of age discrimination under the MHRA or retaliation under the MWA and that there were no positions available given his disability. The district court granted MnDOT summary judgment, dismissing the complaint with prejudice. This appeal follows.

**D E C I S I O N**

Summary judgment must be granted when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). We review a district court's grant of summary judgment de novo, determining "whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). We view the evidence in the light most favorable to the nonmoving party. *STAR Centers*, *Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

This review includes pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits. Minn. R. Civ. P. 56.03.

## I.

Appellant first argues that he was terminated based on his age. Under the MHRA, an employer may not discharge an employee based on age. Minn. Stat. § 363A.08, subd. 2(2) (2014). A plaintiff may prove age discrimination through direct or circumstantial evidence. *Goins v. West Grp.*, 635 N.W.2d 717, 722-24 (Minn. 2001). Where direct evidence is unavailable, Minnesota courts apply the three part burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Goins*, 635 N.W.2d at 724. Under the *McDonnell Douglas* framework, a plaintiff must first show by a preponderance of the evidence that there is a prima facie case of discrimination. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for termination. *Id.* If the employer meets its burden, the plaintiff may show that the legitimate reasons articulated are merely a pretext for discrimination. *Id.*

To establish a prima facie case of discrimination, the plaintiff must show that (1) he is a member of a protected group; (2) he was qualified for opportunities the employer presented to others; (3) he was denied the opportunities despite his qualifications; and (4) the opportunities were given to someone else with his qualifications but who is not a member of his protected group. *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 323-24 (Minn. 1995). The parties agree that appellant is a member of a protected group based on his age.

5

But the parties dispute whether appellant was qualified to work for MnDOT post-injury.  Appellant asserts that the district court erred by making only vague findings as to "what point in time or what job [appellant] was meant to prove that he could do."  It is undisputed that appellant's back injury prevented him from performing the requirements of his hired position.  And appellant does not provide authority that he should have been given more time to recover from his injury or been allowed accommodations for his position, admitting that he has not asserted a disability-discrimination claim.[3]

Appellant claims that he was qualified for and capable of a trainer position because he had previously performed several trainings.  But he does not establish, and MnDOT disputes, that there is a trainer position that would allow him to avoid strenuous manual work.  Appellant also has not presented evidence that he was qualified for opportunities that the employer provided to others and that he was denied these opportunities despite his qualifications.

Appellant next asserts that he was replaced by a younger person and disputes the district court's determination that he was only "technically replaced" by a younger person.  Appellant is required to present specific facts to support his allegations.  *See DLH, Inc.*, 566 N.W.2d at 71 ("[T]he party resisting summary judgment must do more than rest on mere averments.").  The district court concluded that appellant did not

---

[3] Appellant disputes the finding that shortly after his FCE he reached MMI.  The record is unclear as to why, after a physician issued the first MMI finding in 2013, appellant saw another doctor from the same practice who issued a second MMI finding 11 months later.  Appellant does not show the relevance of the MMI as to his ability to perform required job duties and in fact disputes the relevancy of the MMI finding outside of his workers' compensation claim.

provide evidence of who replaced him, and that his claim that he was replaced by a younger employee was "an attempt to gloss over the fact that [appellant] has not provided evidence of who specifically replaced him." Because appellant did not present evidence that he was replaced by a younger person, he has not met his burden to show a prima facie age-discrimination case. And in any event, appellant has not provided any evidence that he could perform his normal, and often strenuous duties, even with accommodations.

Moreover, appellant's assertion that coworkers and Kielty made offensive comments about his age are insufficient to establish an age-discrimination claim. "Stray remarks made in the workplace cannot serve as direct evidence of discrimination," and "[s]tatements made by individuals who do not take part in the decision to discharge an employee also cannot be direct evidence of discrimination." *Diez v. Minn. Mining & Mfg.*, 564 N.W.2d 575, 579 (Minn. App. 1997), *review denied* (Minn. Aug. 21, 1997).

**II.**

Appellant next alleges that the district court erred by concluding that he did not produce evidence sufficient to show that he was terminated for being a whistleblower. Under the MWA,

> [a]n employer shall not discharge [an employee] . . . because:
>     (1) the employee, . . . in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official[.]

Minn. Stat. § 181.932, subd. 1(1) (2014). As with age-discrimination claims, the court applies the *McDonnell Douglas* approach to retaliatory-discharge claims. *McGrath v.*

7

*TCF Bank Sav., FSB*, 502 N.W.2d 801, 805 (Minn. App. 1993), *review granted in part, decision modified on other grounds*, 509 N.W.2d 365 (Minn. 1993). Under this approach, the plaintiff must "establish a prima facie case that his discharge was motivated by an impermissible reason." *Id.* at 807. The burden "then shifts to the employer to articulate another permissible reason for the discharge. If the employer offers such a reason, the factfinder must then determine whether the employer's proffered reason is pretextual." *Id.* (citations omitted).

To establish a prima facie case of retaliatory discharge, the employee must demonstrate that (1) he engaged in statutorily protected conduct; (2) there was an adverse action by the employer; and (3) there was a causal connection between the conduct and the adverse action. *Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 329 (Minn. App. 2007).

Protected actions are "those where the employee discloses conduct the employee reasonably believes evidences a violation of the law." *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 227-28 (Minn. 2010) (quotation omitted). In *Kidwell*, the Minnesota Supreme Court noted that the purpose of the whistleblower statute is to protect neutral parties who report violations of the law for the public good. *Id.* at 227. MnDOT asserts that it was aware of the violations of the law appellant reported. But on appeal, MnDOT does not address all of appellant's reports, notably the report of the sexual harassment of a coworker to MnDOT and the sheriff's department, and the report to the Environmental Protection Agency regarding the oil spill. These actions constitute protected conduct

8

under the whistleblower act because they involved violations of the law and they were not made for appellant's own benefit.

MnDOT next argues that appellant cannot show any adverse action against him. We disagree. Appellant's employment was terminated, and termination constitutes an adverse action. But appellant must also show that his termination was causally connected to his whistleblower claims. Appellant argues that the MnDOT personnel that made the termination decision were aware of complaints given the "copious amounts of emails and other correspondence." Appellant, however, has not presented evidence that the personnel who made the termination decision were aware of complaints that fell under the whistleblower act. Moreover, even if appellant had presented evidence that the personnel who made the decision to terminate him were aware of his whistleblower complaints, no reasonable fact-finder could find a causal connection between these complaints and his employment termination; although appellant made various complaints over the course of several years, he was terminated only after an FCE showed he had permanent physical limitations that prevented him from performing his job duties.

**III.**

Appellant finally argues that summary judgment was inappropriate because, under workers' compensation statutes, he was entitled to a position within his physical limitations and that several such positions were available. "An employer who, without reasonable cause, refuses to offer continued employment to its employee when employment is available within the employee's physical limitations shall be liable in a civil action for one year's wages." Minn. Stat. § 176.82, subd. 2 (2014). MnDOT asserts

9

that, given appellant's physical limitations and his requested geographic demands, there were no available positions. MnDOT further asserts that it requested information from appellant regarding a specific available position, but he did not respond. Appellant does not dispute these assertions but alleges that he worked with a MnDOT job-placement specialist and submitted numerous applications. While appellant cites several positions he applied for, MnDOT responds that he was not qualified for any of these jobs, and appellant provides no evidence that he met these positions' requirements.

Appellant specifically claims that he should have been given a snowplow-trainer position. He was informed, however, that snowplow training was a one-time opportunity and that he was physically unable to be a trainer. While appellant has conducted snowplow trainings, he has not presented evidence that there was a dedicated trainer position or that after his injury he could meet the physical requirements of this job. Although appellant asserts that the district court erred by not construing evidence in his favor, he provides insufficient evidence that he was passed over for job opportunities, and merely asserts that he was qualified for certain positions.

While it is undisputed that even prior to appellant's injury he experienced workplace conflict, appellant has not met his burden to show that these conflicts, or his complaints about them and other issues, were an underlying cause of or pretext for his termination or that he was not offered an available alternative position.

**Affirmed.**

10