Raymond L. HAMBLIN, Appellant,

v.

ALLIANT TECHSYSTEMS, INC.,
a Delaware corporation,
Respondent.

No. C9–01–562.

Court of Appeals of Minnesota.

Nov. 27, 2001.

Thomas P. Malone, Malcolm P. Terry, Barna, Guzy & Steffen, Ltd., Minneapolis, for appellant.

Roy A. Ginsburg, Clifford S. Anderson, Dorsey & Whitney, LLP, Minneapolis, for respondent.

Considered and decided by HANSON, Presiding Judge, RANDALL, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.[*]

In this age discrimination case, appellant challenges the district court's grant of summary judgment in favor of respondent, arguing that issues of material fact exist as to disparate treatment and disparate impact. We reverse as to disparate treatment, affirm as to disparate impact, and remand.

## FACTS

Respondent Alliant Techsystems designs, manufactures, and sells defense-related products and services. Due to decreased military spending in the late 1980s, Honeywell, the predecessor corporation to Alliant, and then Alliant carried out a series of workforce reductions in the 1990s. Alliant accomplished the workforce reductions through voluntary retirements, attrition, and involuntary layoffs. The downsizing resulted in a 62% reduction of Alliant's salaried workforce over a five-year period. In the same five-year period, Alliant's revenues dropped by approximately $458 million.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Appellant Raymond Hamblin was a long-time Honeywell employee before Honeywell's defense-related business became Alliant. Hamblin was 56 years old and a senior product support engineer when his employment was terminated in 1994.

Hamblin offered evidence that, preceding the reduction in workforce, Toby Warson, President of Defense and Marine Systems at Honeywell, stated that he wanted "the older employees targeted because that's the only way to maximize cost reduction." After that statement, Honeywell began implementing new workforce reduction guidelines in which seniority was no longer a critical positive factor.

Between 1990 and 1995, Alliant changed the specific ranking criteria used to select employees for termination. For instance, before Alliant's spin-off from Honeywell, "seniority" was considered a "critical factor." After Alliant was formed, seniority and longevity of service were no longer considered except as a "tiebreaker." In addition, Alliant later employed a "snapshot" approach to employee evaluations. That is, instead of applying a historical perspective, Alliant would look only at an employee's performance since the last review. Under these new criteria, Hamblin was terminated when his ranking dropped from 13th to 29th in his department.

Shortly after Hamblin's termination, the human resources department at Alliant released a document called the "White Paper." The "White Paper" examined issues raised by a possible retirement incentive program. In the section entitled "Buyout into Retirement," the document stated that such a retirement incentive program "[t]argets older, possibly higher paid employees."

Nearly a year later after Hamblin's termination, Richard Schwartz, CEO of Alliant, issued a memorandum (Schwartz memo) discussing a meeting of Minneapolis managers. Under the section entitled, "Management Actions," the memo states, "Hire some new people—additional talent—[y]ounger talent that can be trained." In a deposition, an attendee at the May 3 meeting attributed that statement to Randy Scheistl, Vice President of Tank Ammunitions.

Hamblin filed a lawsuit alleging age discrimination under the Minnesota Human Rights Act. The district court granted Alliant's motion for summary judgment, concluding that Hamblin had failed to establish either disparate treatment or disparate impact.

## ISSUES

I. Did appellant establish a genuine issue of material fact as to his claim of disparate treatment on the basis of age?

II. Did appellant establish a genuine issue of material fact as to his claim of disparate impact on the basis of age?

## ANALYSIS

On appeal from summary judgment, we ask whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn. 1997). This court views evidence in the light most favorable to the non-moving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

■ It is an unfair labor practice under the Minnesota Human Rights Act (MHRA) for an employer, except when based on a bona fide occupational qualification, to discriminate as to terms and conditions of employment on the basis of age. Minn. Stat. § 363.03, subd. 1(2) (2000). When there is no direct evidence of discrimina-

tion, we analyze age discrimination claims using the burden shifting analysis of *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 323 (Minn.1995) (applying McDonnell Douglas test to claim under MHRA). To successfully proceed under the MHRA, (1) the plaintiff must establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a nondiscriminatory reason for its action; and (3) the plaintiff must then prove by a preponderance of the evidence that the reason is merely a pretext for discrimination. *Dietrich*, 536 N.W.2d at 323.

■ The requirements for establishing a prima facie case, however, vary depending on the circumstances involved. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In cases involving employee layoffs, the analysis requires a showing that age was a factor in the termination. *See Dietrich*, 536 N.W.2d at 324 (adopting modification of McDonnell Douglas analysis set forth in *Holley v. Sanyo Mfg.*, 771 F.2d 1161, 1165–66 (8th Cir.1985) for reduction in force cases).

Here, the district court found that the circumstantial and statistical evidence offered by Hamblin satisfied the requirements to establish a prima facie case. The burden then shifted to Alliant, which met its burden by offering legitimate, nondiscriminatory reasons for Hamblin's dismissal, including economic decline and Hamblin's low competitive ranking scores. Under *McDonnell Douglas*, the burden then shifted back to Hamblin to establish pretext. The district court found that Hamblin failed to meet his burden to establish pretext and granted summary judgment to Alliant.

■ In Minnesota, a plaintiff may sustain the burden to establish pretext "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn.1986) (citation omitted).

Hamblin argues that pretext as to disparate treatment is established by: (1) statistical analysis by Hamblin's expert; (2) a series of ageist comments made by executives within Honeywell and Alliant; and (3) the lack of uniformity in Alliant's application of the alleged nondiscriminatory ranking criteria. Taken together, we hold that these offerings establish a material fact issue as to pretext.

*Statistical Analysis*

■ Courts have held that statistical evidence regarding employees in the department where a terminated plaintiff formerly worked may support a finding of pretext. *See, e.g., MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1058 (8th Cir.1988). Hamblin offered the expert testimony of Dr. David Peterson, whose report stated that, when employees were grouped by facility, grade, and work assignment, the standard deviation from nondiscriminatory terminations ranged from 4.40 to 6.23. Alliant's experts and the district court rejected Dr. Peterson's study. When taken in the light most favorable to Hamblin, however, this statistical evidence is probative of Hamblin's assertion of pretext.

*Ageist Comments*

■ Hamblin offers ageist comments made by executives of Honeywell and Alliant as evidence of discriminatory corporate culture. Whether evidence of corporate culture showing bias to older employees is admissible to establish pretext in a disparate treatment case appears to be a case of

first impression in Minnesota. Hamblin argues that the Warson comment, the "White Paper," and the Schwartz memo establish bias of the employer. Other courts have held that evidence of ageist corporate atmosphere, along with other evidence, is sufficient to support a reasonable inference of discrimination. *Madel v. FCI Mktg., Inc.*, 116 F.3d 1247, 1252 (8th Cir. 1997); *see also Lam v. Univ. of Hawaii*, 164 F.3d 1186, 1188 (9th Cir.1998). We hold that such evidence is admissible as to the issue of disparate treatment at trial.

Discrimination is often the result of subtle, unconscious predispositions. Corporate discrimination does not occur in a vacuum. Discrimination feeds on the actions and statements of those involved in that corporate culture.

> [N]umerous circuit courts have acknowledged that "age discrimination may simply arise from an unconscious application or stereotyped notions of ability rather than from deliberate desire to remove older employees from the workforce" and on that basis have ruled in the plaintiff's favor.

Rebecca H. White & Linda H. Krieger, *Whose Motive Matters?: Discrimination in Multi Actor Employment Decision Making*, 61 La. L.Rev. 495, 509 (2001) (citations omitted).

■ In *Reeves v. Sanderson Plumbing Prods., Inc.*, the Supreme Court found that the age-based recommendation to fire Reeves was the functional equivalent of an age-based termination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152–53, 120 S.Ct. 2097, 2111–12, 147 L.Ed.2d 105 (2000). The analysis focused on age as the motivation for the termination, rather than on the discriminatory intent of the direct firing agent. *Id.* In other words, the correct issue is not whether the firing agent had discriminatory intent, but whether the firing corporation had discriminatory intent. Under this rationale, a prejudiced corporation cannot insulate itself by using front-end managers subject to executive pressures.

Here, there is evidence that Toby Warson, Honeywell's President of Defense and Marine Systems, made an ageist remark. Because Warson himself did not actually terminate Hamblin, the remark is not direct evidence of disparate treatment or pretext. *See Diez v. Minn. Mining & Mfg.*, 564 N.W.2d 575, 579 (Minn.App.1997) (statements made by individuals who do not take part in discharge cannot be direct evidence of discrimination), *review denied* (Minn. Aug. 21, 1997). The fact that the comment was made by a top executive, however, is significant because "when a major company executive speaks, 'everybody listens' in the corporate hierarchy." *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 54 (3d Cir.1989) *rev'd on other grounds, Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089 (3d Cir.1995). While a single remark may be insignificant in itself, the echoing of this remark in a human resources memorandum and at a managers' meeting creates a question as to whether a discriminatory corporate culture existed.

*Lack of Uniformity in Application of Ranking Criteria*

■ Finally, Hamblin points out that Alliant cannot show that any of its managers actually applied its ranking criteria to him before his termination. Testimony of an Alliant manager involved in Alliant's ranking process states, "I do not recall ever being given or using any written ranking criteria or directives[.]" The eighth circuit indicated that lack of uniformity in the ranking process is evidence of pretext. *Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 252 n. 3 (8th Cir.1995). Thus, a lack of uniformity in applying

ranking criteria is fact evidence as to pretext.

■ The combination of statistical evidence, evidence of discriminatory corporate culture, and lack of uniformity in Alliant's ranking process, along with Hamblin's sharp drop in ranking, is evidence sufficient to raise an issue of fact as to pretext when the evidence is viewed in the light most favorable to Hamblin. Therefore, we reverse the district court's summary judgment as to Hamblin's claim of disparate treatment.

## II.

■ Additionally, Hamblin argues that he has produced sufficient evidence of disparate impact on the basis of age to preclude summary judgment. Disparate impact claims are expressly recognized under the Minnesota Human Rights Act. Minn. Stat. § 363.03, subd. 11 (2000).

To establish a prima facie case, the plaintiff must prove "that an employment practice is responsible for a statistically significant adverse impact on a particular class of persons protected by § 363.03, subd. 1(2)." Minn.Stat. § 363.03, subd. 11. Once this burden is met, "an employer must justify that practice by demonstrating that the practice is manifestly related to the job or significantly furthers an important business purpose." *Id.* If the practice is justified, the plaintiff must demonstrate "the existence of a comparably effective practice that the court finds would cause a significantly lessor adverse impact on the identified protected class." *Id.*

■ Alliant has cited its decline in revenue prompting reductions in workforce as a business justification. Hamblin has offered no evidence of any alternatives that would result in less discriminatory cost savings comparable to reductions in workforce. *See Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1988) (plaintiff is responsible for isolating and identifying specific employment practices that are allegedly responsible for any observed statistical disparities). Hamblin has failed to demonstrate the existence of a comparably effective practice that would cause a significantly lessened adverse effect on older employees as required by Minn.Stat. § 363.03, subd. 11. We agree with the district court that Hamblin failed to meet his burden of establishing a claim for disparate impact age discrimination as a matter of law.

## DECISION

We affirm summary judgment on Hamblin's claim of disparate impact, conclude that evidence of disparate treatment was sufficient to withstand summary judgment, and we reverse and remand on that claim.

**Affirmed in part, reversed in part, and remanded.**