*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0925

Greg Peterson,
Appellant,

Souphanny Dean,
Co-Appellant,

Brian Rogge, et al.,
Plaintiffs,

vs.

City of Richfield, Minnesota,
Respondent.

**Filed March 21, 2016**
**Reversed and remanded**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CV-13-20359

Gregg M. Corwin, Grant S. Gibeau, Gregg M. Corwin & Associate Law Office, P.C., St. Louis Park, Minnesota (for appellants)

Julie Fleming-Wolfe, St. Paul, Minnesota (for respondent)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**LARKIN**, Judge

Appellants challenge the district court's grant of summary judgment for respondent. Because there are genuine issues of material fact regarding appellants' claims under the Minnesota Human Rights Act, summary judgment is inappropriate. We therefore reverse and remand.

## FACTS

Appellants Greg Peterson and Souphanny Dean are Richfield Police Department (RPD) officers employed by respondent City of Richfield (city). In April 2012, Peterson sued the city, claiming that the RPD engaged in age discrimination when it removed him from the special investigations unit earlier that year. The district court held a bench trial and ordered judgment for Peterson on September 19, 2013.

In the fall of 2013, Peterson, Dean, and Brian Rogge, who were all over 40 years old, applied to be eligible for promotion to a detective position with the RPD. Andrew Ueland and Rian Jensen, two RPD officers who were in their late 20s or early 30s, also applied for the position. The application process consisted of a written exam, which the RPD administered on October 8, and an oral interview, which the RPD conducted on October 15. Based on the written exam and oral interviews, the RPD ranked the applicants and assigned final scores as follows: (1) Ueland: 70.75; (2) Jensen: 67; (3) Peterson: 56.25; (4) Dean: 55.25; and (5) Rogge: 54.5. Because Ueland and Jensen scored higher than the other officers, they were next in line to receive detective promotions under the RPD's promotional system.

Peterson, Dean, and Rogge sued the city, alleging that the city violated the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08, subd. 2 (2014), by "changing the promotional process to discriminate against older officers in favor of younger officers" and, in fact, promoting "two younger officers . . . at the expense of three older officers." Peterson also alleged that the city retaliated against him, in violation of Minn. Stat. § 363A.15 (2014), by ranking two less-experienced officers above him in the oral interview because he prevailed in his previous age-discrimination lawsuit against the city. Another RPD officer, Jeff Hatzenbeller, also over 40 years old, joined the lawsuit, alleging that the city engaged in age discrimination when the RPD denied him a crime-prevention-officer assignment. The city moved for summary judgment, and the parties presented the following evidence for the district court's consideration.

Prior to 2012, the RPD used a detective-eligibility exam developed by a company called Personnel Decisions Inc. (PDI) and comprised of four parts: (1) a written background and experience statement scored by PDI, (2) a written test scored by PDI, (3) an oral interview with a panel that included one RPD command staff member and two command staff members from other police departments, and (4) a "promoteability index," which ranked candidates using metrics such as integrity, professionalism, and work product based on input from supervisors.

In 2010, the RPD learned that prior candidates had shared the detective-eligibility oral-interview questions with other candidates. Following this discovery, the RPD changed its testing procedure. The new exam had two components: (1) a written test comprising 40% of an applicant's total score, evaluated by Standard & Associates, a national testing

service, and (2) an oral interview comprising 60% of the score. The oral-interview panel included city human-resources staff and RPD command staff. Command staff members from outside police departments no longer participated in the evaluation process. The RPD used the new exam procedure to fill a sergeant position in 2012.

The exam that Peterson, Dean, and Rogge took to determine their eligibility for the detective promotion mirrored the exam the RPD administered in 2012 to fill the sergeant position. The interview panel included Lieutenant Michael Koob and Deputy Chief Jay Henthorne from the RPD, Human Resources Manager Jesse Swensen, and Assistant City Manager Pamela Dmytrenko. The panel members scored the applicants as follows:

| Applicant: | Panel Members: | | | |
| --- | --- | --- | --- | --- |
| | Koob | Henthorne | Swensen | Dmytrenko |
| Ueland | 60 | 64 | 81 | 78 |
| Jensen | 63 | 66 | 68 | 71 |
| Peterson | 63 | 52 | 52 | 58 |
| Dean | 57 | 55 | 56 | 53 |
| Rogge | 63 | 59 | 53 | 43 |

Appellants presented evidence that they had performed well enough on prior exams to score at or near the top of the applicant pool. For example, Peterson received the highest oral interview score on the 2008 sergeant examination. Dean received the highest score on the 2009 detective examination. Appellants also presented evidence regarding their experience. Peterson joined the RPD in 1997, had more investigative experience than any other patrol officer in the RPD, and had worked on the special investigative unit, the metro

4

gang strike force, the ICE task force, and the narcotics canine unit. Dean joined the RPD in 1993 and had four years of investigative experience. In contrast, Ueland had two and a half years of investigative experience, and Jensen had one and a half years of investigative experience.

Rogge submitted an affidavit dated August 25, 2014, stating that, after the October 2013 detective exam, Lieutenant Koob approached him to discuss his test results and told him: "I don't want you to go south like other officers who have 18 years of experience." Rogge's affidavit stated that "[b]ased on the tone of his voice, it was clear that Lt. Koob was inferring that older officers had become a liability for the department" and that he "was floored by this comment because Lt. Koob's statement confirmed that age had factored into the grading process." The city submitted Rogge's deposition testimony from July 23, 2014. During his deposition, the city's attorney asked Rogge "Did any supervisor or manager make any ageist remarks to you?" Rogge answered "The only one would be from Lieutenant Mike Koob in the patrol room where he said he didn't want officers of, you know, with my tenure—he didn't really use age, but of my seniority going south."

Fellow plaintiff Hatzenbeller submitted deposition testimony from Jill Mecklenburg, a civilian assigned to the crime-prevention unit, and Amy Dusek, a Hennepin County community liaison. Hatzenbeller had applied to the crime-prevention unit, which historically was comprised of one police officer and one civilian partner. The RPD posted the position in March 2013. When the application period closed on April 8, Hatzenbeller was the only applicant. Rather than appoint Hatzenbeller, the RPD command staff decided to keep the crime-prevention-officer assignment vacant for an indeterminate period of time.

5

Mecklenburg testified that on April 9, the day after the posting for the assignment closed, Deputy Chief Henthorne told her that "they didn't want it to be a retirement position." Dusek similarly testified that Deputy Chief Henthorne told her that he did not want the assignment to become a "retirement position."

The district court granted the city's motion for summary judgment on all claims except Hatzenbeller's age-discrimination claim. Hatzenbeller's claim was tried to the district court, and the district court entered judgment against him. Peterson and Dean appeal.

## D E C I S I O N

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993).

> [T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). Where reasonable minds might draw different conclusions from the evidence presented, summary judgment is inappropriate. *Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 665 (Minn. 2015).

"[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir*

6

*Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. The reviewing court considers only the evidence that was before the district court in the summary-judgment proceeding. *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 404 (Minn. 1998).

## I.

Appellants contend that the district court erred in dismissing their age-discrimination claims because "[m]aterial facts existed that if taken as true evinced a discriminatory animus behind the results of the 2013 exam." Under the MHRA, an employer may not discriminate against an employee based on age. Minn. Stat. § 363A.08, subd. 2(3). "[P]roof of a discriminatory motive may be established by direct evidence." *Goins v. W. Grp.*, 635 N.W.2d 717, 722 (Minn. 2001). "Direct evidence of an employer's discriminatory motive shows that the employer's discrimination was

purposeful, intentional or overt." *Id.* "Courts have found direct evidence of discriminatory motive where a statement or a policy is discriminatory on its face." *Id.*

Proof of discrimination may also be established by circumstantial evidence under the three-part burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Goins*, 635 N.W.2d at 724.

> The *McDonnell Douglas* scheme allocates the burden of producing evidence between the parties and establishes the order of presentation of proof. A plaintiff must establish a prima facie case of discriminatory motive. If the plaintiff makes this showing, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the employer articulates such a reason, the plaintiff must then put forward sufficient evidence to demonstrate that the employer's proffered explanation was a pretext for discrimination.

*Id.* (citation omitted); *see also Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) ("In construing the MHRA, we apply law developed in federal cases arising under Title VII of the 1964 Civil Rights Act . . . ."); *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 623 (Minn. 1988) ("As the result of the substantial similarities existing between Title VII and [the MHRA], we have frequently applied principles which have evolved in the adjudication of claims under the federal act, and, specifically we have adopted the *McDonnell Douglas* analysis as an aid to resolving cases claiming disparate treatment."). "Under [the *McDonnell Douglas*] framework, a plaintiff may establish a prima facie case of discrimination in a failure-to-promote case by showing that: (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of

the protected group, were promoted instead." *Gentry v. Georgia-Pac. Corp.*, 250 F.3d 646, 650 (8th Cir. 2001).

Appellants appear to argue that the comments made by Lieutenant Koob and Deputy Chief Henthorne constitute direct evidence that demonstrates a "discriminatory animus in the decisional process." But appellants did not argue that they had direct evidence of discrimination in district court. As the district court stated, appellants "acknowledge they do not have direct evidence of age discrimination, and they instead rely on the *McDonnell Douglas* indirect method." "A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). A party may not obtain review by raising the same general issue litigated below but under a different theory. *Id*. We therefore do not consider the statements under the direct-evidence standard.

Under the *McDonnell Douglas* test, the parties agree that appellants established a prima facie case of discrimination and that the city articulated a legitimate, nondiscriminatory reason for the change in testing procedure, which resulted in the eligibility roster ranking Peterson and Dean lower than Ueland and Jensen. Thus, the only issue before this court is whether appellants put forward sufficient evidence to demonstrate that the city's proffered explanation was a pretext for discrimination.

"To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, a plaintiff must demonstrate the existence of evidence of some additional facts that would allow a jury to find that the defendant's proffered reason is pretext and that the

9

real reason for its action was intentional discrimination." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995). The combination of several evidentiary items, each of which alone may be inadequate, can be sufficient to raise an issue of fact regarding pretext. For example, "[t]he combination of statistical evidence, evidence of discriminatory corporate culture, and lack of uniformity in [the employer's] ranking process, along with [the age-discrimination plaintiff's] sharp drop in ranking, is evidence sufficient to raise an issue of fact as to pretext when the evidence is viewed in the light most favorable to [the plaintiff]." *Hamblin v. Alliant Techsystems, Inc.*, 636 N.W.2d 150, 155 (Minn. App. 2001), *review denied* (Minn. Feb. 19, 2002).

Appellants argue that the following evidence, considered in its entirety, would allow a jury to find that the city's proffered reason for changing the promotional process is pretextual and that the real reason for its action was age discrimination: (1) because the city removed the promoteability index and the background and experience sections of the original exam and allocated the majority of the possible total points to the oral-examination, older officers were not able to use their experience and history of positive service, (2) the clustering of points and the disparity of the scores between the older and younger officers on the new exam, (3) the district court's determination that the city previously discriminated against Peterson based on age, and (4) the comments of Lieutenant Koob, who approached Rogge after the test and said to him: "I don't want you to go south like other officers who have 18 years of experience," and Deputy Chief Henthorne, who said that he did not want the crime-prevention-officer position to become a "retirement position."

The city contends that this court should not consider Lieutenant Koob's statement because it was offered by Rogge "as an improper attempt to manufacture factual support for his and appellants' age discrimination claim." The city argues that "Rogge's affidavit [regarding Lt. Koob's comment] significantly contradicted his deposition testimony by changing what Lt. Koob said to him and reinterpreting it to change an age-neutral statement into a statement arguably indicative of age bias." We disagree. Although "[a] self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact," *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 881 (Minn. App. 1995), Rogge's affidavit is consistent with his earlier deposition testimony. In his deposition about a month earlier, the city's attorney asked Rogge "Did any supervisor or manager make any ageist remarks to you?" Rogge replied "The only one would be from Lieutenant Mike Koob in the patrol room where he said he didn't want officers of, you know, with my tenure—he didn't really use age, but of my seniority going south." The city's attorney asked Rogge if he "interpreted that to be a remark that was ageist" and Rogge answered "[y]eah." We therefore consider Lieutenant Koob's alleged statement in our analysis.

The city also contends that this court should not consider Deputy Chief Henthorne's comment. Specifically, it argues that appellants are "collaterally estopped from arguing that Deputy Chief Henthorne made the statement referring to a 'retirement position,'" because after summary judgment was granted on the other claims, the district court ruled against Hatzenbeller at trial, finding that "plaintiff failed to prove by a preponderance of the evidence . . . that any member of command staff used [the term 'retirement position']."

11

We do not consider the city's collateral-estoppel argument because it is made for the first time on appeal. *See Thiele*, 425 N.W.2d at 582 ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)). Moreover, on review of summary judgment, this court considers only the evidence that was before the district court in the summary-judgment proceeding. *See Wall*, 584 N.W.2d at 404 (rejecting argument that appellate court "should consider the entire trial record and not merely the evidence before the district court at summary judgment").

The city also argues that Deputy Chief Henthorne's statement should not be considered because the alleged statement was not made about Peterson or Dean, did not refer to the October 2013 detective promotion process, and was therefore "too remote in time and subject matter." The city relies on a rule applied under the direct-evidence standard, which provides that "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" do not constitute direct evidence of discrimination. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999) (quotations omitted). But even under that standard, direct evidence may include "[c]omments which demonstrate a discriminatory animus in the decisional process," or those "uttered by individuals closely involved in employment decisions." *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991) (quotation omitted).

We are not considering the statements under the direct-evidence standard. We are considering, under the *McDonnell Douglas* test, whether appellants put forward sufficient

12

evidence to demonstrate that the city's proffered explanation for changing the promotional process was a pretext for discrimination. As to this issue, we are persuaded by the reasoning of the Eighth Circuit, which has explained that "[i]n a pretext case," even stray remarks are "surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury." *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir. 1997) (citations and quotations omitted). "Stray remarks therefore constitute circumstantial evidence that, when considered together with other evidence, may give rise to a reasonable inference of age discrimination." *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 923 (8th Cir. 2000).

Deputy Chief Henthorne was a decisionmaker during the October 2013 detective-promotional process and his alleged comment—although made about another hiring decision—was made within months of the October 2013 exam. Even if his comment is a "stray remark," it is properly considered as circumstantial evidence along with the other evidence. Deputy Chief Henthorne's suggestion that he did not want the crime-prevention-officer position to become a "retirement position" after the position was left open rather than filled by Hatzenbeller, who was over 40 years old, is certainly the type of comment that "could cause a reasonable trier of fact to raise an eyebrow."

The city further contends that this court should not consider the changes to the detective exam. The city argues that appellants' MHRA claims based on the changes to the exam process are barred by the statute of limitations because the changes occurred more than one year before appellants brought their lawsuit. *See* Minn. Stat. § 363A.28, subd. 3 (2014) ("A claim of an unfair discriminatory practice must be brought . . . within one year

13

after the occurrence of the practice.").  We are not persuaded.  Although the new exam was developed and applied to a sergeant-promotion process in 2012, it was not tailored to or applied to the detective-promotion process until 2013.  Appellants filed their lawsuit in November 2013.

The city argues that neither the changes in the exam process nor the results of the October 2013 exam "support an inference of discrimination."  Although it may be true that neither the changes to the exam process nor the results of the October 2013 exam alone would allow a jury to find that the real reason for the city's action was intentional discrimination, that evidence in combination with the other evidence offered by appellants is sufficient to raise an issue of fact regarding pretext when viewed in the light most favorable to appellants.  Reasonable minds could draw different conclusions from the evidence presented.

"The district court's function on a motion for summary judgment is not to decide issues of fact, but solely to determine whether genuine factual issues exist."  *DLH*, 566 N.W.2d at 70.  We conclude, de novo, that there are genuine issues of material fact regarding appellants' age-discrimination claims and that summary judgment on those claims is therefore inappropriate.

**II.**

Peterson contends that the district court erred by granting the city's motion for summary judgment on his retaliation claim.  Section 363A.15 provides that:

> It is an unfair discriminatory practice for any individual
> who participated in the alleged discrimination as a[n] . . .

14

employer . . . to intentionally engage in any reprisal against any person because that person:

> (1) opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

"A reprisal claim is analyzed under the *McDonnell Douglas* burden-shifting test. The prima facie case for reprisal consists of: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001) (citation and quotation omitted).

Peterson contends that the district court erred by dismissing his "claim that his results on the 2013 exam were retaliation for winning his prior age discrimination case against [the city] 26 days prior to the oral examination portion of the 2013 exam." Peterson argues that he "successfully . . . establish[ed] statutorily protected conduct, his lawsuit, and adverse action by the employer, his negative score on the 2013 exam," and that the district court erred by determining that he could not show a causal connection between the two. Specifically, Peterson argues that the following evidence shows a genuine issue of material fact regarding causation: (1) the 26-day temporal proximity between the age-discrimination verdict in his favor in September 2013 and the results of his October 2013 exam, (2) his prior high examination scores, (3) his strong overall job performance, and (4) the fact that the "two officers who testified against Peterson and were benefited by [the city's] previous illegal conduct, Ueland and Jensen, were the two who scored the highest on the 2013 promotional exam."

The city contends that Peterson abandoned his retaliation claim in district court "by failing to address the city's argument that the claim should be dismissed in his response to summary judgment." The record does not support the city's assertion that Peterson abandoned his retaliation claim. At the summary-judgment hearing, the district court asked Peterson's attorney to clarify the claims that the plaintiffs were asserting. Peterson's attorney stated that Peterson claimed reprisal on the basis that the city retaliated against him for prevailing on an age-discrimination lawsuit in September 2013.

As to the merits of Peterson's retaliation claim, the city argues that the verdict in Peterson's previous discrimination lawsuit and the date of the oral interviews "were not the two events that should have been used to determine temporal proximity." Instead, the city argues, "the date of Peterson's protected conduct in filing the age discrimination claim (April 2012), and the adverse action in failing to promote him (October [13,] 2013, when the eligibility register was certified), were the operative dates for purposes of determining temporal proximity." Which event, if any, motivated the city to retaliate against Peterson is for the factfinder to determine at trial.

The city also argues that "generally more than a temporal connection is required to present a genuine factual issue on retaliation" and "Peterson did not have any additional evidence other than the timing between the verdict on his previous age discrimination claim and the oral interviews in the 2013 detective promotional process." But as set forth above, Peterson does not solely rely on temporal proximity. He also relies on his prior test scores and good job performance, among other things. That evidence is sufficient to present an issue of fact regarding causation.

16

Once again, when reviewing summary judgment, we must "view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. Under that standard, reasonable minds could draw different conclusions from the evidence presented. We therefore conclude that there are genuine issues of material fact regarding Peterson's retaliation claim and that summary judgment on that claim is inappropriate. We reverse the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**