*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0938**

Daniel J. Keller,
Appellant,

vs.

Monumental Sales, Inc., et al.,
Respondents.

**Filed March 18, 2024**

**Reversed and remanded
Connolly, Judge**

Stearns County District Court
File No. 73-CV-21-8261

Sarah R. Jewell, River Valley Law, P.A., Waite Park, Minnesota (for appellant)

Cally Kjellberg-Nelson, Chad A. Staul, Elle M. Lannon, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondents)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant challenges the summary-judgment dismissal of his claims against respondents for discriminatory discharge in violation of the Minnesota Human Rights Act

(MHRA), Minn. Stat. §§ 363A.01-.50 (2022).[1]  Appellant argues that the summary judgment was improper because there are issues of material fact related to his age and disability claims, and his reasonable-accommodation claim.  Because we agree, we reverse and remand.

## FACTS

Respondent Monumental Sales, Inc., which was purchased and became part of respondent St. Cloud Industrial Products, Inc. in the 1990s, is in the business of manufacturing and designing stone cemetery markers and monuments.  Appellant Daniel Keller began working for Monumental in 1988, as a general laborer.  In 2011, appellant's position title changed to Auto Sandblaster.  As an Auto Sandblaster, appellant's job duties included: (1) using a roller system to push and pull granite slabs, which weighed between 80 and 2,000 pounds; (2) rolling out a stencil on the granite and ensuring that the spelling of words and designs were correct; (3) programming the machines for each piece of material; (4) lifting and transporting 50-pound bags of Blastite once or twice per week to fill the machine; (5) maintaining the machines; and (6) cleaning up around the shop.

In early May 2017, appellant informed his supervisor that he had injured his back during a non-work-related activity, and that he could no longer perform all his job duties.  But after a physician's visit on May 16, 2017, appellant received a "Certificate to Return to Work," which allowed him to begin working on light duty.  Appellant's restrictions limited

---

[1] The MHRA was amended in 2023 to, among other things, modify the definitions of protected classes under the statute.  2023 Minn. Laws ch. 52, arts. 3, § 3, at 679-80, 19, §§ 45-72, at 920-31.  The amendments do not impact our analysis in this opinion.

him from lifting anything greater than 20 pounds, or bending at the waist, until May 30, 2017. Respondents accommodated appellant and placed him on temporary light duty.

Appellant's condition failed to improve, prompting him to schedule surgery for August 29, 2017. Respondents then extended appellant's light duty through the date of surgery. But after the surgery, appellant was not immediately cleared to return to work. Instead, he was granted medical leave.

Appellant's ability to return to work was assessed at a follow-up appointment in mid-October 2017. At the appointment, appellant's physician recommended further recovery and referred him to occupational therapy for two weeks. Thereafter, on October 31, 2017, respondents were informed that appellant needed to remain off work for two additional weeks.

On November 7, 2017, appellant was examined by his physician, who noted that appellant's typical work duties involved lifting 50 pounds and frequently pushing and pulling "very heavy weights." The physician also noted that appellant "does not feel that he would be able to do his typical job at this time." The physician then recommended that appellant be restricted "to a 15 pound lift," that he "change positions between sitting and standing or vice versa for a few minutes every 90 minutes," and that appellant "not do any frequent bending to reach below the waste." Although the physician stated that he was "essentially" taking appellant "out of work until at least January 1, 2018," the physician stated that he was hopeful that appellant would eventually be able to return to work after he completed physical therapy.

Despite not being cleared to work by his physicians, appellant contacted his employer and requested to return to work on light duty when his medical leave was exhausted on November 22, 2017. Respondents refused this request and later, on November 20, 2017,

terminated appellant's employment. Appellant was told that the company was "unduly burdened without [a] production employee and due to business demand," but that he was welcome to apply for any open position when he was able to work. Appellant was 59 years old when his employment was terminated, and he was replaced by a 54-year-old employee.

Appellant brought this action against respondents under the MHRA alleging that the decision to terminate his employment was discriminatory on the basis of age and disability, and that respondents failed to provide a reasonable accommodation for his disability. Respondents subsequently moved for summary judgment. The district court determined that appellant could not establish a prima facie case of age and disability discrimination because he was "unqualified to perform the essential functions of [his] position." The district court also determined that appellant's "accommodation requests would have imposed an undue burden" on respondents, and that "there was no reasonable accommodation" of appellant that respondents could have provided. The district court, therefore, granted respondents' motion for summary judgment and dismissed appellant's claims. This appeal follows.

## DECISION

Appellant challenges the district court's summary-judgment dismissal of his claims under the MHRA. This court reviews a district court's summary-judgment decision de novo. *Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 228 (Minn. 2020). In doing so, we examine "whether there are any genuine issues of material fact and whether the district court properly applied the law." *Henry v. Indep. Sch. Dist. #625*, 988 N.W.2d 868, 880 (Minn. 2023). We view the evidence in the light most favorable to the nonmoving party and resolve all doubts and factual inferences against the moving party. *Id.* In

4

reviewing grants of summary judgment, we do not weigh evidence or assess credibility. *Id.* Instead, we ask whether "reasonable persons might draw different legal conclusions from the evidence presented." *Kenneh*, 944 N.W.2d at 228. If so, summary judgment must be denied. *Id.*

## I.

Under the MHRA, an employer may not discharge an employee because of the employee's age or disability. Minn. Stat. § 363A.08, subd. 2(2) (2022). A plaintiff may prove discrimination through direct or circumstantial evidence. *Goins v. W. Grp.*, 635 N.W.2d 717, 722-24 (Minn. 2001). As here, where direct evidence is unavailable, Minnesota courts apply the three-part burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Goins*, 635 N.W.2d at 724.

Under the *McDonnell Douglas* framework, a plaintiff must first show by a preponderance of the evidence that there is a prima facie case of discrimination. *Id.* To establish a prima facie case of discrimination, appellant must establish that he: "(1) is a member of [a] protected class; (2) was qualified for the position from which [he] was discharged; and (3) was replaced by a non-member of the protected class." *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001) (quotation omitted). Once a prima facie case is established, the burden shifts to the employer to offer a legitimate and nondiscriminatory reason for the adverse employment action. *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012). If the employer offers such a reason, the burden shifts back to the plaintiff to provide sufficient evidence showing that the employer's proffered reason is a pretext for discrimination. *Id.*

5

The district court here found that respondents "are not disputing that [appellant] is a member of a protected class under the MHRA." But the district court determined that appellant could not satisfy the second prong of the prima facie analysis because appellant "was unqualified to perform the essential functions of [his] position." The district court then stated that its determinations that appellant "was no longer qualified for the position" are "dispositive of the issue of age and disability discrimination" and, therefore, it "decline[d] to address whether [appellant] was replaced by a non-member of the protected class[es]." The district court noted, however, that "[e]ven if [appellant] was qualified, he would not be able to prove that he was replaced by a person outside the protected age group to make out a prima facie case for age discrimination."

Appellant argues that, because there is at least an issue of material fact as to whether he was qualified for the position from which he was discharged, the district court erred "by finding that appellant could not show a prima facie case for disability discrimination." Respondents disagree, and argue that, even if appellant was qualified to do his job, summary judgment was appropriate because appellant "has no evidence indicating [that] he was replaced by a person outside his protected class[es]." These issues are discussed below.

A.    *There is a genuine issue of fact as to whether appellant was qualified to perform the essential functions of his job position.*

Minnesota law provides that "'[q]ualified disabled person' means . . . a disabled person who, with reasonable accommodation, can perform the essential functions required of all applicants for the job in question." Minn. Stat. § 363A.03, subd. 36(1). The

6

Minnesota Supreme Court has explained that "essential functions" generally means "the fundamental job duties of the employment position." *McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 230-31 (Minn. 2019) (quotation omitted). This "concept does not include the marginal functions of the position." *Id.* at 231 (quotation omitted). The following factors may be considered in determining whether a job function is "essential":

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Id.* (quotation omitted).

The district court determined that the "objective" of appellant's position "was to manufacture and design stone cemetery markers and monuments," which "required [appellant] to lift 50[-pound] bags of Blasti[te], and maneuver 80-2,000[-pounds] of granite onto the roller machine between 5 to 30 times a day." The district court also found that these tasks are "essential to [appellant's] employment position" because, "[i]f these tasks aren't completed, [appellant] would be unable to produce any markers or monuments." And the district court found that, "[a]t the date of his employment termination," appellant "was restricted from lifting above 15 pounds and advised not to frequently bend at the waist." As such, the district court concluded that appellant was not qualified to perform the essential functions of his employment position.

Appellant argues that the district court erred in granting summary judgment because "[t]here is a genuine issue of material fact as to what appellant's essential functions were,"

7

as well as whether he could perform those duties. To support his position, appellant relies on *McBee*, in which the supreme court considered whether genuine issues of fact precluded summary judgment on an employee's reasonable-accommodation claim. 925 N.W.2d at 230. In that case, an employee was terminated from her employment after she suffered a spinal injury that resulted in restrictions limiting the employee from lifting more than 10 pounds. *Id.* at 224-25. On appeal, the employer argued that the employee was not qualified for the position because lifting 10 pounds was "in itself" an essential function of the employee's position. *Id.* at 232. The employer also pointed to its "written job description stating that lifting 50 pounds was an essential function[,] and to a report of [the employer's] occupational therapist calculating that 10-pound-plus activities, such as pushing gaylords, accounted for 102 to 339 minutes" of the employee's typical day. *Id.* But although the supreme court stated that these facts were "legally relevant," the court noted that the employee "testified that she was previously accommodated with a 20-pound restriction," which "call[ed] into question [the employer's] reliance on its job description." *Id.* The court stated that, "[i]f lifting 50 pounds were truly essential, then [the employee's] past accommodation would not have been possible." *Id.* The court ultimately concluded that summary judgment was inappropriate because, "[o]n balance, even though [the employer's] judgment and calculation about the frequency of 10-plus-pound tasks weigh against" the employee, there was also substantial evidence presented that weighed in favor of the employee. *Id.* at 232-33.

Appellant argues that, like in *McBee*, the fact that he "was previously accommodated with light duty work calls into question [r]espondents' reliance" on the

8

heavy lifting as an essential job function. We agree. The record reflects that, after appellant injured his back, respondents accommodated appellant by placing him on temporary light duty under restrictions limiting appellant from lifting anything greater than 20 pounds or bending at the waist. As in *McBee*, if the heavy-lifting aspects of his employment were truly essential, then respondents' past accommodation would, arguably, not have been possible. *See id.* at 232 (stating that, "[i]f lifting 50 pounds were truly essential, then [the employee's] past accommodation would not have been possible"). Thus, under *McBee*, there is an issue of fact as to whether the heavy-lifting aspects of appellant's employment were essential to appellant's job position.

*McBee* also supports appellant's position that there is an issue of fact as to whether appellant could perform his essential job duties with a reasonable accommodation. In *McBee*, the supreme court construed the deposition testimony of a shift lead as evidence that the employee could perform the fundamental functions of her job, "with the exception" of two functions. *Id.* at 231. The supreme court then concluded that, even assuming that the two functions are "essential functions," there was evidence in the record reflecting "a genuine dispute of material fact as to whether reasonable accommodation would allow [the employee] to perform those tasks." *Id.* The supreme court based its conclusion on evidence that one of the tasks in question could be performed in different ways, and the other task in question was rarely performed, and when it was, assistance from other workers was often required. *Id.* at 231-32. Thus, the supreme court held that summary judgment was erroneously granted. *Id.* at 233.

9

Here, like in *McBee*, there are issues of material fact related to whether appellant can perform two essential functions with a reasonable accommodation: (1) lifting 50-pound bags of Blastite into the machine, and (2) maneuvering 80-2,000 pounds of granite onto a roller machine "between 5 to 30 times a day." With respect to the 50-pound bags of Blastite, the record indicates that the machine needed to be filled with Blastite only once or twice a week, and that there were typically employees available to assist in lifting the 50-pound bags. *See id.* at 231 (recognizing that, with one of the essential tasks in question, evidence was presented that the task was only performed sporadically over the course of a year and that assistance was always available to the employee in performing the task). Although a reasonable amount of assistance may not have allowed appellant to fill the machines with Blastite, the issue is one for a jury to decide.

Moreover, the record reflects that some of the granite slabs weighed up to 2,000 pounds. Common sense dictates that these slabs could not be lifted by one person, and the record reflects that respondents' employees used traveler cranes to help move and maneuver the granite slabs. Although appellant's restrictions prevented him from lifting more than 15 pounds, it is unclear from the record if appellant's work restrictions prevented him from using the traveler crane. It is also unclear from the record if appellant was restricted from pushing and maneuvering the slabs once they were on the roller machine. Thus, like in *McBee*, there are issues of fact as to whether a reasonable accommodation, such as a traveler crane, would allow appellant to perform his essential job functions.

Respondents argue that *McBee* is distinguishable from this case because no employee of respondents testified that appellant could perform his job with a reasonable

10

accommodation, and appellant agreed in his deposition testimony that he could not perform his job duties. Indeed, the record reflects that, in light of his condition, appellant was asked the following question at his deposition: "So on May 7, 2017, you don't believe you were able to do the job that was required of you?" Appellant answered, "That, and standing." But appellant never conceded that he could not perform certain job functions. And appellant never conceded that, with a reasonable accommodation, he could not perform his job duties. As such, appellant's testimony is not dispositive of the issue.

Moreover, although, unlike in *McBee*, none of respondents' employees testified that appellant *could* perform his job with a reasonable accommodation, there is also no testimony from respondents indicating that appellant *could not* perform his job duties with a reasonable accommodation. In fact, the record indicates that, when accommodated by respondents by being placed on light duty, appellant was able to perform the duties expected of him. Again, as in *McBee*, if appellant was unable to perform his job duties while on light duty, then the past accommodation arguably would not have been possible. *See id.* at 232. Finally, the record reflects that respondents were involved in seasonal work, and that appellant was terminated at the end of the busy season. In light of the fact that the slow season was just beginning, an issue of material fact exists as to whether the slow season would help respondents accommodate appellant.

In sum, like in *McBee*, there are material issues of fact concerning appellant's essential job functions and whether he could perform those functions. Accordingly, the district court erred in concluding that appellant was not qualified to perform his employment position.

11

### B. There is a genuine issue of fact as to whether appellant was replaced by a non-member of a protected class.

Respondents argue that, "[e]ven if [a]ppellant could show [that] he was qualified for the position, summary judgment must still be affirmed for failure to meet his prima facie burden because he cannot show [that] he was replaced by a person outside of his protected class[es]." We disagree. Although the district court declined to reach this issue, it noted that, "[e]ven if [appellant] was qualified, he would not be able to prove that he was replaced by a person outside the protected age group to make out a prima facie case for age discrimination" because appellant was replaced by an individual five years younger than appellant. But the district court did not address whether the individual who replaced appellant had a disability. And the record reflects that appellant submitted a declaration stating that he had previously worked with the individual who replaced him, and this individual "never showed any signs of having a disability of any sort." This evidence demonstrates that, at the very least, there is an issue of fact related to whether appellant was replaced by a non-member of the protected class. Therefore, we conclude that the district court erred in granting summary judgment in favor of respondents on appellant's claims of disability and age discrimination.[2]

---

[2] Respondents also argue that, even if appellant "could create a genuine issue as to his prima facie burden, [r]espondents are still entitled to summary judgment because [a]ppellant cannot overcome [r]espondents' legitimate non-discriminatory reasons for the decision to terminate [appellant's] employment." But as appellant points out, his "main argument against [r]espondents' claims of legitimate non-discriminatory reasons for the decision to terminate [him] was due to the substantial amount of money in ESOP plan benefits that [a]ppellant had accrued and was still accruing, while he was employed with [r]espondents." Relevant to this issue was a motion to compel discovery regarding the ESOP plan, which the district court declined to address "[s]ince [appellant] could not establish a prima facie case of discrimination." Because the district court has not yet ruled on the motion to compel discovery regarding the ESOP plan, which is potentially relevant

Appellant also challenges the district court's dismissal of his reasonable-accommodation claim. Under the MHRA, employers with the requisite number of employees are required "to provide a reasonable accommodation for a . . . qualified employee with a disability unless the employer, agency, or organization can demonstrate that the accommodation would impose an undue hardship on the business, agency, or organization." Minn. Stat. § 363A.08, subd. 6(a) (2022). A failure-to-accommodate claim requires that the employee establish that he is a qualified person, who "(1) possess[es] the requisite skill, education, experience, and training for [his] position, and (2) [is] able to perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (quotation omitted); *see also Hoover*, 632 N.W.2d at 547. If appellant can make this facial showing, the burden then shifts to respondents to show that it is unable to reasonably accommodate appellant. *See Collins v. Abbott Labs., Inc.*, 972 F.3d 976, 978 (8th Cir. 2020).

As addressed above, there is an issue of fact as to whether appellant is a qualified employee. But respondents argue that this court can still affirm the summary-judgment dismissal of appellant's reasonable-accommodation claim because the district court properly concluded that appellant could not be reasonably accommodated. We are not persuaded.

---

to appellant's arguments related to pretext, it would be premature for us to reach respondents' arguments related to pretext.

Under the MHRA, a "reasonable accommodation" may include "job restructuring, modified work schedules, reassignment to a vacant position, . . . or modification of equipment or devices." Minn. Stat. § 363A.08, subd. 6(a). When determining whether an accommodation would impose an undue hardship under the MHRA, courts consider the following factors:

> (1) the overall size of the business or organization with respect to number of employees or members and the number and type of facilities;
> (2) the type of operation, including the composition and structure of the work force, and the number of employees at the location where the employment would occur;
> (3) the nature and cost of the needed accommodation;
> (4) the reasonable ability to finance the accommodation at each site of business; and
> (5) documented good faith efforts to explore less restrictive or less expensive alternatives, including consultation with the disabled person or with knowledgeable disabled persons or organizations.

*Id.*, subd. 6(b) (2022).

The district court determined that appellant "did not name a vacant position [to] which he could have been reassigned" and, therefore, appellant's "request would have required [respondents] to create an entirely new position or reassign another employee to his position." The district court also determined that

> from May 2017 through August 2017, [appellant] had been placed on light duty. After his surgery, [appellant] was on [medical] leave until the end of November 2017. At that time of his employment termination, [appellant's] physicians had not cleared him to work. [Appellant's physician] did not believe [appellant] would be able to return to work until January 1, 2018. Even if Monumental was starting its slow season, [appellant] would have been unable to fully perform his duties for approximately 8 months. Without a replacement,

14

> this would have caused a production backlog and [a]ffected the company's earning potential.

Thus, the district court concluded that respondents could not have reasonably accommodated appellant because appellant's "accommodation requests would have imposed an undue burden on [respondents]."

Appellant argues that there is an issue of fact regarding whether his request for an accommodation of light-duty work was unduly burdensome because respondents' "concern about loss of production did not align with the timing of appellant's termination, nor with [his] previous accommodation." We agree. The record reflects that, despite the fact that appellant was on light duty from May 2017 to the end of August 2017, respondents point to no evidence showing that its accommodation of appellant had an impact on production or revenue. In fact, appellant claimed that the opposite was true, referencing the fact that, while he was on light duty, he was never informed that his work performance caused a production backlog, or that overtime was necessary to cure production defects due to his light-duty accommodation. In addition, respondents point to no evidence in the record indicating that respondents' production or revenue were impacted while appellant was on medical leave. Simply put, respondents point to no evidence showing that appellant's injury, or his accommodation, had any impact on production or revenue. As such, the district court's determination that appellant's inability to "fully perform his duties for approximately 8 months" "would have caused a production backlog and [a]ffected the company's earning potential" lacks evidentiary support in the record.

15

Moreover, the record reflects that appellant was terminated shortly after he requested to return to work on light duty in November 2017. Appellant's request for accommodation corelated with the beginning of the winter season when production slowed. As appellant points out, this production slowdown may have impacted respondents' ability to reasonably accommodate appellant. And, if appellant was in fact performing his essential job duties while on light duty, then the light-duty accommodation would seemingly be reasonable. Thus, there is an issue of material fact as to whether appellant's request for light-duty accommodation would impose an undue hardship on respondents.

Respondents argue that summary judgment was appropriate because appellant could not be reasonably accommodated. To support their position, respondents assert that "[i]t is undisputed that [a]ppellant explicitly informed [r]espondents following his surgery [that] he 'wasn't able to do any kind of work, period.'" But appellant's ability to work following his surgery *is* disputed. Although the record clearly reflects that appellant was restricted from returning to his normal work duties until at least January 1, 2018, evidence in the record suggests that appellant was able to return to work on light duty in November 2017. For example, following a visit on November 7, 2017, appellant's physician wrote: "With regard to work I would currently restrict [appellant] to a 15-pound lift and to change positions between sitting and standing or vice versa for a few minutes every 90 minutes. I also would have him not do any frequent bending to reach below the waist." These restrictions are akin to appellant's restrictions prior to his surgery when he was on light duty.

In addition, the record reflects that, after meeting with his physician on November 7, 2017, appellant asked to return to work on light duty. In response to his request, appellant was informed that he needed to come back "100 percent." This response further indicates that appellant was able to return to work before January 1, 2018, albeit on light duty. As such, there is an issue of material fact as to whether appellant could have returned to work, in some capacity, at the time his employment was terminated. We therefore reverse and remand for trial because there are material facts in dispute.

**Reversed and remanded.**